[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-13534

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JESUS RODRIGUEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cr-20411-FAM-1

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and GRANT, Circuit Judges.

JILL PRYOR, Circuit Judge:

Jesus Rodriguez appeals his sentence for possession with intent to distribute 100 grams or more of heroin and 50 grams or more of methamphetamine. There are four issues on appeal: whether (1) the district court erred in imposing a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance, under § 2D1.1(b)(12) of the Sentencing Guidelines, (2) Rodriguez's sentence is procedurally and substantively unreasonable, (3) technical malfunctions during Rodriguez's sentencing hearing conducted remotely via videoconference violated his Sixth Amendment right to counsel at a critical stage of criminal proceedings, and (4) the district court erred by imposing conditions of supervised release in the written judgment that were not orally pronounced at the sentencing hearing. After careful review, and with the benefit of oral argument, we affirm Rodriguez's sentence in part, vacate in part, and remand for limited resentencing as to the conditions of supervised release.

## I.    BACKGROUND

Rodriguez pled guilty to possession with intent to distribute 100 grams or more of a substance or mixture containing heroin and 50 grams or more of a substance or mixture containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1). The mandatory minimum term of imprisonment was five years, and the statutory maximum was 40 years.

Rodriguez stipulated in a factual proffer that the following facts would have been proved at trial. Rodriguez manufactured counterfeit pills and conducted drug trafficking activity at his home. Law enforcement conducted multiple trash pulls at Rodriguez's home and found in his trash supplement packaging with unknown white powder, discarded pills, ventilator masks, and gloves. Police executed a search warrant of Rodriguez's home and arrested him after they discovered him trying to flush counterfeit pills down the toilet. In their search of Rodriguez's home, police found 56 grams of a mixture and substance containing methamphetamine, approximately 300 grams of a mixture and substance containing heroin, a chemical mask, two scales, and $50,000 in cash.

Before sentencing, the United States Probation Office prepared a presentence investigation report ("PSR") to help the district court determine Rodriguez's sentence. The PSR calculated a base offense level of 26 based on the combined quantity of heroin and methamphetamine found in his home. The PSR applied a two-level enhancement under § 2D1.1(b)(12) of the Sentencing Guidelines because Rodriguez had maintained a premises for the purpose of manufacturing or distributing a controlled substance. It then applied a two-level reduction under § 2D1.1(b)(18) because Rodriguez met the safety-valve criteria set forth in § 5C1.2(a)(1)–(5). Another two-level reduction was applied under § 3E1.1(a) for Rodriguez's acceptance of responsibility. Finally, the PSR subtracted one point under § 3E1.1(b) because Rodriguez had timely notified the government of his intention to plead guilty. Combined, the enhancement and the reductions yielded a total offense level of 23.

The PSR noted that Rodriguez had two prior convictions, neither of which resulted in any criminal history points under the guidelines. In 1990, Rodriguez was charged with trafficking cocaine and possession of cocaine. The trafficking charge was dropped; he was found guilty on the possession charge and spent 23 days in jail. In 1996, he was charged with conspiracy to commit kidnapping with a weapon, carrying a concealed weapon, and possession of a cloned cellphone. Each of these charges was dropped except for possession of a cloned cellphone for which he spent four days in jail. Based on a total offense level of 23 and a criminal history category of I, the PSR calculated a recommended guideline range of 46 to 57 months' imprisonment.

The PSR noted that the guideline range for a term of supervised release was at least two years but not more than five years. The PSR also recommended three special conditions of supervised release. The first condition was that Rodriguez submit to searches of his person and property by the United States Probation Office. The second was that upon completion of his term of imprisonment, Rodriguez be surrendered to the custody of Immigration and Customs Enforcement for removal proceedings. The third condition was that if Rodriguez have any unpaid restitution, fines, or special assessments, he was required to notify his probation officer of any material change in his economic circumstances that could affect his ability to pay. The PSR mentioned no other terms or conditions of supervised release. It made no mention of a standing administrative order from the Southern District of Florida setting forth supervised release conditions.

Before sentencing, Rodriguez objected to portions of the PSR and requested a downward variance. He objected to the § 2D1.1(b)(12) enhancement for maintaining a premises used for drug manufacturing or distribution, arguing that neither he nor the government had anticipated a premises enhancement, he did not use his home to manufacture drugs, and the "primary or principal" use of his family home was not the manufacture, delivery, or storage of controlled substances. *See* U.S. Sent'g Guidelines Manual § 2D1.1 cmt. n.17 (U.S. Sent'g Comm'n 2018).

The sentencing hearing was conducted remotely using the Zoom videoconferencing platform, with Rodriguez, defense counsel, the prosecutor, and the district judge in different physical locations. At the beginning of the hearing, defense counsel indicated that she was having difficulty hearing the court. The court proposed halting the hearing and resuming in person, but defense counsel did not respond to this suggestion.

After the sound issue was temporarily resolved, Rodriguez's counsel again objected to the premises enhancement. She argued that manufacturing or distributing a controlled substance was not a principal or primary use of his home because he and his family had lived there for 15 years, whereas the drug activity had lasted only six months. After stating the objection, defense counsel again indicated that she could not hear the court. The court replied, "Something is happening to your Wi-Fi . . . because now not every word is coming in . . . . I don't know what we should do." Doc. 82

at 12.[1] Defense counsel tried to answer, but her connection failed again. The prosecutor then began to respond to defense counsel's objection to the premises enhancement. While the prosecutor was responding, the courtroom deputy told the court that defense counsel had disconnected from the videoconference. The court halted proceedings until she rejoined.

When the proceedings resumed, defense counsel further argued that the premises enhancement should not apply because law enforcement had not recovered the pill press, a critical tool for drug manufacturing, in their search of Rodriguez's home. The court asked whether there was any dispute concerning Rodriguez's statement in his factual proffer about manufacturing narcotics at his home. Defense counsel continued to experience technical issues and again disconnected from the meeting. The district court again paused the proceedings until she reconnected.

After reconnecting, defense counsel agreed that Rodriguez's factual proffer stated that he manufactured the drugs. She explained that "a majority of the time, . . . the manufacturing was being done at the co-conspirators' houses" but that Rodriguez had manufactured drugs at his home "in the past." *Id.* at 27. The district court then asked Rodriguez directly how often he manufactured drugs in his house. Rodriguez responded, "Never, never. No, I never said when I was talking with the prosecutor's office that I manufactured drugs in my house." *Id.* at 29.

---

[1] "Doc." numbers refer to the district court's docket entries.

At this point, defense counsel stated that she had disconnected during the exchange between the court and Rodriguez and had not heard what was said. The maximum amount of time that defense counsel could have been disconnected amounted to approximately two transcript pages out of 52.

Based on Rodriguez's denial that he had never manufactured drugs at his house, the prosecutor then stated that the government would withdraw its § 5K1.1 motion and asked the district court to remove the reduction for acceptance of responsibility. Defense counsel repeated that she had dropped from the meeting, and the district court suggested that they postpone the virtual proceeding and continue the hearing in person.

Again, defense counsel did not respond to the court's suggestion to continue the hearing in person. Instead, she stated that Rodriguez "put the stuff together[,] and he had items to manufacture" but the "pill press was always at other people's houses." *Id*. at 36. The prosecutor agreed with this characterization, stating "I'm not saying the pill press was necessarily in the house; that the depths of manufacturing as I understand them, sorting the materials, getting the powders, examining them and storing pressed drugs and distributing drugs, all occurred at the house." *Id*. at 38. Rodriguez agreed with this description. The hearing proceeded without any further technical issues.

The district court overruled Rodriguez's objection to the premises enhancement, finding that the use of his home was not collateral or incidental. The court recognized that "if you only sell

drugs one time in a house that is used for anything else, the enhancement is not appropriate." *Id*. at 37. The court explained that "even though the home has been owned for 20 years, if it's been used with drugs, multiple drugs, it's enough for the enhancement." *Id*. at 39–40. The district court adopted the guidelines range as calculated in the PSR.

Rodriguez argued for a downward variance and 30-month sentence because of his cooperation, age, extensive medical issues, lack of substantial criminal history, and low likelihood of recidivism. The district court stated that Rodriguez's criminal history category "understated" his past criminal conduct. *Id*. at 45**.** The court reviewed his past convictions and explained that one of his prior convictions had been reduced by a "very busy" state court system, "but it was a narcotics investigation." *Id*. The court explained, "[S]ince I think [Rodriguez] actually probably should be in Criminal History Category II, I could upward vary and find that the guidelines are 51 to 63 months." *Id*.

Based on Rodriguez's two prior convictions, to which the PSR assigned no criminal history points, the court explained that it would impose a sentence of 60 months if there had been no cooperation. Using 60 months as a starting point, the court then reduced the sentence by 10 months based on Rodriguez's cooperation, for a final sentence of 50 months' imprisonment.

The court also imposed a five-year term of supervised release. The court did not detail the conditions of supervised release,

20-13534                Opinion of the Court                9

stating only, "Upon release from imprisonment, you'll be placed on supervised release, $100 special assessment, no fine." *Id*. at 50.

After sentencing, the district court issued a written judgment imposing 13 discretionary conditions of supervised release. These conditions were taken from a 1988 administrative order in the Southern District of Florida, which identifies the conditions "hereby imposed" whenever an individual is placed on supervised release "unless altered or modified by special order." *See* S.D. Fla., Administrative Order 1988-06, *Standing Conditions of Probation and Supervised Release* (1988) ("Administrative Order 1988-06"), https://www.flsd.uscourts.gov/sites/flsd/files/adminorders/1988-06.pdf [https://perma.cc/GYF2-AXVY].

Ten of the conditions closely tracked the standard conditions contained in the Sentencing Guidelines.[2] *See* U.S. Sent'g

_____

[2] These conditions required that Rodriguez: not leave the judicial district without the permission of the court or probation officer; report to the probation officer and submit a truthful and complete written report within the first 15 days of each month; answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer; work regularly at a lawful occupation, unless excused; notify the probation officer at least 10 days prior to any change in residence or employment; not associate with persons engaged in criminal activity or with any persons convicted of a felony unless granted permission; permit a probation officer to visit him at any time and permit confiscation of contraband observed in plain view by the probation officer; notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer; not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and notify third parties of risks that may be occasioned by his criminal

Guidelines Manual § 5D1.3(c)(1)–(13). The other three conditions listed in the administrative order and imposed on Rodriguez were not standard conditions under the Sentencing Guidelines. These conditions required that the defendant (1) "support his or her dependents and meet other family responsibilities," (2) "not frequent places where controlled substances are illegally sold, used, distributed, or administered," and (3) "refrain from excessive use of alcohol" and "not purchase, possess, use, distribute, or administer any controlled substance." Doc. 72 at 3.

Rodriguez appealed his sentence.

## II.    STANDARD OF REVIEW

"We review *de novo* the interpretation of a sentencing guideline." *United States v. Warren*, 820 F.3d 406, 407 (11th Cir. 2016). "Whether a defendant maintained a premises for the manufacture or distribution of drugs is a finding of fact that we review under the clear-error standard." *United States v. George*, 872 F.3d 1197, 1205 (11th Cir. 2017). "A factual finding is clearly erroneous when, upon review of the evidence, we are left with a definite and firm conviction a mistake has been made." *United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015).

"We review the reasonableness of a sentence under an abuse-of-discretion standard." *United States v. Melgen*, 967 F.3d 1250,

---

record or personal history or characteristics and permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirements.

1264 (11th Cir. 2020). "In reviewing a sentence for reasonableness, we first consider whether the district court committed any significant procedural error, and next consider whether the sentence was substantively reasonable." *Id.* Significant procedural error includes "failing to calculate (or improperly calculating) the Guideline range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553 factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *United States v. Delva*, 922 F.3d 1228, 1255 (11th Cir. 2019) (internal quotation marks omitted).[3]

When a defendant fails to raise procedural unreasonableness in the district court, we review for plain error. *United States v. Suarez*, 893 F.3d 1330, 1336 (11th Cir. 2018). "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th

---

[3] Under § 3553(a), the district court must impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of the statute. 18 U.S.C. § 3553(a). These purposes include the need to: reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. *Id.* § 3553(a)(2). The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)–(7).

Cir. 2005) (internal quotation marks omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* "[W]here the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Corbett*, 921 F.3d 1032, 1037 (11th Cir. 2019).

"[A]fter it has been determined that a sentence is procedurally sound, we review the sentence's substantive reasonableness." *United States v. Wayerski*, 624 F.3d 1342, 1353 (11th Cir. 2010). "A district court abuses its considerable discretion and imposes a substantively unreasonable sentence only when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015). "A district court's sentence need not be the most appropriate one, it need only be a reasonable one." *United States v. Whyte*, 928 F.3d 1317, 1338 (11th Cir. 2019) (internal quotation marks omitted). We do not apply a presumption of reasonableness to sentences within the guideline range, but we ordinarily expect such a sentence to be reasonable. *United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014). Likewise, "[a] sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence." *Id.*

### III.    DISCUSSION

On appeal, Rodriguez raises four arguments. First, he argues that the district court erred by imposing an enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance. Second, he contends his sentence was procedurally and substantively unreasonable. Third, he argues the technical malfunctions during his sentencing hearing violated his Sixth Amendment right to counsel. Fourth, he challenges the conditions of his supervised release that were not orally pronounced at his sentencing hearing. We address each argument in turn.

### A.    The District Court Properly Applied the Enhancement for Maintaining a Premises for the Purpose of Manufacturing or Distributing a Controlled Substance.

Rodriguez argues that the district court erred by imposing the § 2D1.1(b)(12) enhancement because the primary or principal use of his residence was as a family home, and the use of his home for drug activity was only collateral or incidental. He argues that the district court incorrectly applied § 2D1.1(b)(12) by failing to consider the totality of the circumstances and factually erred by finding that the distribution of a controlled substance was a primary or principal use of his home. We disagree.

Section 2D1.1(b)(12) provides for a two-level enhancement if a defendant "maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S. Sent'g Guidelines Manual § 2D1.1(b)(12). Manufacturing or distributing a controlled substance need not be the sole purpose for which the

residence was maintained, but it must be a "primary or principal," rather than an "incidental or collateral," use. *Id.* § 2D1.1 cmt. n.17. In making this determination, courts consider how frequently the premises were used for manufacturing or distributing drugs versus for lawful purposes. *Id.* Courts should "view the totality of the circumstances to determine whether a defendant 'maintained' a premises for drug distribution or manufacture." *George*, 872 F.3d at 1205.

First, Rodriguez argues that the district court incorrectly applied § 2D1.1(b)(12) because it failed to look at the "totality of the circumstances" and instead focused exclusively on the presence of drugs at his home. But the record shows that the district court considered that Rodriguez used his home for purposes unrelated to drugs. The district court acknowledged that Rodriguez "used [his] home for other things," stating, "I know that you didn't manufacture narcotics in your home for the 20 years." Doc. 82 at 28–29. The court explained that even if Rodriguez had conducted non-drug-related activities at his residence, the enhancement would still be appropriate if he engaged in a sufficient amount of drug-related activity there. Because the district court did not in fact focus solely on the presence of drugs at Rodriguez's residence and considered that he used his home for other purposes, the district court properly considered the totality of the circumstances when determining whether Rodriguez maintained a premises for drug distribution or manufacturing under § 2D1.1(b)(12).

Second, Rodriguez argues that the district court erred in finding that the manufacture or distribution of drugs was a primary or principal use of Rodriguez's home, rather than a collateral or incidental one. Again, we disagree. The district court did not clearly err when it found that one of the primary uses of Rodriguez's house was for drug manufacturing and distribution.

Although Rodriguez's residence was used as a family home, "a premises can have more than one primary use, so long as the drug activity is more than incidental or collateral." *George*, 872 F.3d at 1206 (internal quotation marks omitted); *see also United States v. Miller*, 698 F.3d 699, 706 (8th Cir. 2012) (concluding that the premises enhancement applied "when the defendant use[d] the premises for the purpose of substantial drug-trafficking activities, even if the premises was also her family home at the times in question"). In *George*, we affirmed the district court's application of the premises enhancement where the government presented evidence of drug activity at the defendant's apartment. *George*, 872 F.3d at 1206. A single witness had testified that the defendant purchased multiple pounds of marijuana at his apartment on one occasion and that the defendant had packaging equipment, scales, heat-sealing machines, and firearms at the apartment. *Id.* Based on this evidence, we concluded that the district court "did not clearly err in determining that the § 2D1.1(b)(12) increase was appropriate." *Id.*

Here, the government presented evidence to show that the drug activity at Rodriguez's house was more than incidental or collateral and was one of the primary uses of his house. Law

enforcement officials conducted eight trash pulls outside of Rodriguez's house and found "supplement packaging with unknown white powder, discarded pills, ventilator masks, and gloves." Doc. 44 at 1. When law enforcement searched Rodriguez's home, they found him trying to flush pills down the toilet. They also found 56 grams of methamphetamine, approximately 300 grams of heroin, approximately 10 grams of counterfeit pills containing methamphetamine, $50,000 in cash, a chemical mask, and two scales. And, during the sentencing hearing, Rodriguez agreed that "sorting the materials, getting the powders, examining them and storing pressed drugs and distributing pressed drugs, all occurred at [his] house." Doc. 82 at 38. This evidence supports the district court's finding that Rodriguez engaged in extensive drug activity at his home; it was not a "collateral or incidental" use of his residence. Based on this evidence, the district court did not clearly err in applying the premises enhancement.

## B.    The District Court Did Not Impose a Sentence That Was Procedurally or Substantively Unreasonable.

Rodriguez next argues that the sentence the district court imposed was procedurally and substantively unreasonable. Rodriguez asserts that the district court's reliance on his uncounted criminal history was procedurally unreasonable because the court failed to adequately explain why his prior convictions warranted a sentencing increase. He argues his sentence was substantively unreasonable because his prior convictions did not justify an initial upward variance to 60 months. We reject Rodriguez's arguments.

As an initial matter, Rodriguez "failed to argue procedural unreasonableness below, and so we review for plain error." *Suarez*, 893 F.3d at 1336. A sentence is procedurally unreasonable if the district court "fail[s] to adequately explain [its] chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). We have explained that a district court commits procedural error by failing "to give any explanation of its reasons for imposing a sentence" or by providing "no reasoning or indication of what facts justified . . . a significant variance from the advisory Guidelines range." *United States v. Livesay*, 525 F.3d 1081, 1093 (11th Cir. 2008).

The district court committed no error, much less plain error, because it adequately explained how it arrived at Rodriquez's sentence. The district court explained that it started at 60 months because of Rodriguez's two prior convictions, which the PSR did not take into account. The court then explained that it would grant a 10-month reduction because of Rodriguez's cooperation. Moreover, the 50-month sentence was within the guideline range of 46 to 57 months as described in the PSR, and "[g]enerally, when sentencing within the advisory Guidelines range, the district court is not required to give a lengthy explanation for its sentence." *Id.* at 1090. Thus, Rodriguez has failed to show that the district court plainly erred.

Rodriguez also argues that his sentence was substantively unreasonable. At his sentencing hearing, Rodriguez advocated for a sentence of 30 months' imprisonment. "A defendant who, by

advocating for a particular sentence, communicates to the trial judge his view that a longer sentence is 'greater than necessary' has thereby informed the court of the legal error at issue in an appellate challenge to the substantive reasonableness of the sentence." *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766–67 (2020). So, we review the substantive reasonableness of Rodriguez's sentence for an abuse of discretion. *See Rosales-Bruno*, 789 F.3d at 1255. The party challenging a sentence has the burden to show that it was substantively unreasonable. *Id*. at 1256.

Rodriguez argues the district court abused its discretion by initially varying his sentence upward to 60 months, which was above the guideline range of 46 to 57 months. He contends that his criminal history was "modest" and did not justify the upward variance. Brief for Appellant at 27. Although Rodriguez's criminal history was limited, the district court's variance also was limited: three months beyond the guideline range. "[T]he justification for the variance must be sufficiently compelling to support the degree of the variance." *United States v. Irey*, 612 F.3d 1160, 1187 (11th Cir. 2010) (en banc) (internal quotation marks omitted). We have "upheld large upward deviations based solely on an offender's extensive criminal history." *United States v. Osorio-Moreno*, 814 F.3d 1282, 1288 (11th Cir. 2016). Rodriguez's modest criminal history supported the district court's modest upward variance.

Moreover, the district court did not stop with the upward variance of 60 months. It then reduced Rodriguez's sentence by 10 months because of Rodriguez's cooperation, for a final sentence of

50 months' imprisonment, which was within the guideline range of 46 to 57 months. We ordinarily expect that a sentence within the guidelines is reasonable. *Stanley*, 739 F.3d at 656. Additionally, 50 months is significantly below the statutory maximum of 480 months, which provides another "indicator of reasonableness." *United States v. Goldman*, 953 F.3d 1213, 1222 (11th Cir. 2020). The district court did not abuse its discretion by sentencing Rodriguez to 50 months' imprisonment.

## C.    Rodriguez Is Not Entitled to Resentencing Because of the Videoconference Malfunctions.

Rodriguez next argues that he is entitled to resentencing because technical malfunctions prevented his counsel from being present for the entire sentencing hearing. Rodriguez points to several instances where hearing participants commented on defense counsel's poor connection and one instance where the district court questioned Rodriguez while his attorney was disconnected.

Rodriguez contends that because of these technical difficulties he lacked representation during a critical phase of his criminal proceedings in violation of his Sixth Amendment right to counsel. *See Golden v. Newsome*, 755 F.2d 1478, 1482 (11th Cir. 1985) (noting that sentencing is a "critical stage" of the criminal proceeding implicating a defendant's Sixth Amendment right to counsel). Thus, he argues, he is entitled to relief without a showing of prejudice. *See United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984) ("The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented

from assisting the accused during a critical stage of the proceeding."). However, "the vast majority of constitutional errors that occur at a criminal trial, including Sixth Amendment violations, should be examined for prejudicial effect and those errors do not require reversal if they are harmless." *United States v. Roy*, 855 F.3d 1133, 1167 (11th Cir. 2017) (en banc) (applying harmless-error analysis where defense counsel was absent from criminal trial for seven minutes and what happened during the absence was known and repeated upon counsel's return). Here, the record does not "suggest the complete denial of counsel or the breakdown of the trial process." *United States v. Margarita Garcia*, 906 F.3d 1255, 1266 (11th Cir. 2018). The technical malfunctions here do not warrant a presumption of prejudice because they were brief in the context of the sentencing hearing and what occurred while defense counsel was disconnected was repeated when she rejoined, with no adverse effect on Rodriguez's sentence.

Because Rodriguez failed to preserve the argument below, we review for plain error. *See id.* at 1268 (applying plain error review where defense counsel was absent while the prosecution examined a witness but "failed to timely object to the errors notwithstanding having been given every opportunity to do so"). Rodriguez had multiple opportunities to object to defense counsel's absence during the sentencing hearing and failed to do so. The district court suggested postponing the sentencing hearing and resuming in person to remedy the technical difficulties. But Rodriguez's counsel did not take the court up on its offer. At the close of the hearing, the district court asked whether either party had any

objections. Again, Rodriguez failed to object based on the videoconference malfunctions. We therefore review for plain error.

Even if we were to assume that there was error, which was plain, under plain error review, a party must show that the error "affected substantial rights, which almost always requires that the error must have affected the outcome of the district court proceedings." *Rodriguez*, 398 F.3d at 1299 (alteration adopted) (internal quotation marks omitted). Rodriguez has failed to show that the technical malfunctions affected the sentence he received, so his challenge must fail.

The worst technical malfunction occurred when Rodriguez's counsel disconnected from the videoconference while the district court was asking Rodriguez about the drug activity that occurred at his house. When defense counsel reconnected, the district court repeated the inquiry. While his counsel was present, Rodriguez agreed with the prosecutor's description of the drug activities that occurred at his house. The district court relied on this information when making factual findings related to the premises enhancement under § 2D1.1(b)(12). The district court did not rely on any information it obtained from Rodriguez while his counsel was absent.[4] Thus, Rodriguez has failed to show that the statements he

---

[4] After Rodriguez's statements during defense counsel's absence, the government requested to withdraw its § 5K1 motion to reduce Rodriguez's sentence based on acceptance of responsibility. When defense counsel reconnected, Rodriguez agreed with the government's description of activities in his house,

made while his attorney was disconnected affected the outcome of his sentencing.

## D.    The District Court Erred by Imposing Conditions of Supervised Release Not Included in Rodriguez's Oral Sentence.

Finally, Rodriguez argues he is entitled to resentencing because the conditions of supervised release imposed in the district court's written judgment were not pronounced during his sentencing hearing. We agree with Rodriguez that the district court erred in imposing additional conditions in the written judgment.

A defendant has a right to be present at his sentencing hearing. A district court must orally pronounce a defendant's sentence in his presence, and ordinarily the court cannot add to the defendant's sentence in a written judgment entered after the sentencing hearing. This case calls on us to apply these general principles in the context of a district court's imposition of conditions of supervised release. We hold that a district court must pronounce at the defendant's sentencing hearing any discretionary conditions of supervised release—that is, any condition of supervised release other than those mandatory conditions set forth in 18 U.S.C. § 3583(d). A district court may easily satisfy this requirement by referencing a written list of supervised release conditions. For instance, the court may orally adopt the conditions of supervised release

---

the government did not withdraw its § 5K1 motion, and the district court ultimately applied the reduction for acceptance of responsibility.

recommended in the defendant's PSR or in a standing administrative order. By referencing at sentencing a written list, the court affords any defendant who is unfamiliar with the conditions the opportunity to inquire about and challenge them.

In this case, at Rodriguez's sentencing hearing the district court announced that his sentence included a five-year term of supervised release but did not identify any conditions of supervised release or reference any written list of conditions. Later, in the written judgment, the court added 13 discretionary conditions of supervised release. Because Rodriguez had no notice or opportunity to be heard regarding these conditions, we vacate the discretionary conditions that the district court did not announce at the sentencing hearing and remand.[5]

A defendant has a constitutional right to be present and represented by counsel when the district court pronounces his sentence. *See United States v. Huff*, 512 F.2d 66, 71 (5th Cir. 1975). The right to be present at sentencing derives from the Fifth Amendment's Due Process Clause. *See id.*; *United States v. Gagnon*, 470 U.S.

---

[5] The government contends that we should review this argument for plain error because Rodriguez failed to object to the conditions of supervised release at his sentencing. As we discuss below, however, Rodriguez had no opportunity to object at sentencing to the discretionary conditions of supervised release because they were included for the first time in the written judgment. *See United States v. Bull*, 214 F.3d 1275, 1278 (11th Cir. 2000) (concluding defendant did not waive a sentencing issue by failing to object where he "had no opportunity to object at sentencing because the court included the requirement for the first time in its written final judgment"). We therefore review this legal argument *de novo*.

522, 526 (1985). To satisfy due process, the district court must pronounce the sentence, "giving the defendant notice of the sentence and an opportunity to object." *United States v. Diggles*, 957 F.3d 551, 560 (5th Cir. 2020) (en banc); *cf. United States v. Jackson*, 923 F.2d 1494, 1496–97 (11th Cir. 1991) (noting the right to be present at sentencing ensures that "the defendant has an opportunity to challenge the accuracy of information the sentencing judge may rely on, to argue about its reliability and the weight the information should be given, and to present any evidence in mitigation he may have"). As the Supreme Court has explained:

> [A] defendant has a due process right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge. The presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.

*Gagnon*, 470 U.S. at 526 (alterations adopted) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105–06 (1934)).

Due process concerns arise when a district court's in-court pronouncement of a sentence differs from the judgment that the court later enters. As our sister circuit has explained, "[i]ncluding a sentence in the written judgment that the judge never mentioned when the defendant was in the courtroom is tantamount to sentencing the defendant *in absentia*" and thus offends due process. *Diggles*, 957 F.3d at 557 (internal quotation marks omitted). However, a district court's failure to announce each condition of

supervised release at sentencing does not necessarily give rise to a due process violation. Let us explain.

When a district court imposes a term of supervised release, federal law distinguishes between conditions that the court must impose and those that it may impose. *See* 18 U.S.C. § 3583(d). Section 3583(d) first lists conditions the court "shall" impose (some for all offenses, others for certain offenses). Examples include not committing a crime or unlawfully possessing a controlled substance, cooperating in the collection of a DNA sample, paying any restitution, and registering as a sex offender for offenses that require it. *Id.*

The statute then states that a district court "may" impose other conditions that are "reasonably related" to certain statutory sentencing factors, "involve[] no greater deprivation of liberty than is reasonably necessary" to accomplish certain sentencing objectives, and are consistent with the Sentencing Guidelines. *Id.*

We agree with our sister circuits that due process principles generally require a court to pronounce at the sentencing hearing discretionary, but not mandatory, conditions of supervised release. *See Diggles*, 957 F.3d at 559; *United States v. Anstice*, 930 F.3d 907, 910 (7th Cir. 2019) ("As commonplace and sensible as these [discretionary] conditions may be across federal sentences, Congress has not mandated their imposition. If a district court does choose to impose them, they must be announced at sentencing."); *United States v. Rogers*, 961 F.3d 291, 296 (4th Cir. 2020) ("[A]ll non-mandatory conditions of supervised release must be announced at a defendant's sentencing hearing."). When a condition is mandatory, "there is

little a defendant can do to defend against it." *Diggles*, 957 F.3d at 558. Indeed, by the very nature of a mandatory condition, any objection that a defendant could raise to the condition would be "futile." *Id.* at 559. We therefore cannot say that a due process violation occurs when a district court imposes a mandatory condition that it failed to pronounce at sentencing.

But the analysis is different when a district court imposes in a written sentence a discretionary condition that it did not announce at the sentencing hearing. The omission of such a condition violates principles of due process because the defendant was denied an opportunity to be heard on the discretionary condition by, for example, "disput[ing]" that the condition "is necessary" or arguing that it should take another form. *Id.* at 558. A defendant may object, for example, that a particular condition is unreasonably onerous or does not apply to the defendant's individual circumstances. *See United States v. Zinn*, 321 F.3d 1084, 1088 (11th Cir. 2003) (considering defendant's argument that discretionary condition restricting internet usage was overly burdensome); *United States v. Bree*, 927 F.3d 856, 858, 860–61 (5th Cir. 2019) (concluding that special condition requiring defendant to participate in a "mental-health treatment" program based on past substance abuse was inappropriate when defendant would participate in a separate substance abuse program and there was no evidence of other mental health conditions).

Turning to this case, Rodriguez raises a general argument that the district court erred when it imposed the discretionary

conditions because it never identified them at the sentencing hearing.[6] And the conditions were not identified in Rodriguez's PSR.[7] By adding these conditions of supervised release in the written judgment issued after the sentencing hearing, the district court denied Rodriguez notice and an opportunity to object to the conditions. *See Diggles*, 957 F.3d at 559.

The government argues that Rodriguez nevertheless received sufficient notice because the Southern District of Florida previously adopted an administrative order identifying conditions—including those listed in the written judgment—that apply whenever an individual is placed on supervised release.[8] We

---

[6] The district court also imposed mandatory conditions of supervised release requiring that Rodriguez report to the probation office after his release; not commit another federal, state, or local crime; not unlawfully use or possess a controlled substance; report for mandatory drug testing; not possess a firearm, ammunition, destructive device, or other dangerous weapon; cooperate in the collection of a DNA sample; and pay any fine or restitution imposed. Rodriguez does not challenge the district court's imposition of these mandatory conditions.

[7] We agree with our sister circuits who have held that the oral in-court adoption of recommended conditions included in the PSR satisfies the oral pronouncement requirement. *See Diggles*, 957 F.3d. at 560–61. Here, however, the district court failed to orally adopt any conditions of supervised release. And, even if the district court had orally adopted the conditions recommended in the PSR, the PSR did not include the challenged conditions imposed in the written judgment.

[8] We note that one of the imposed conditions differed slightly from the condition listed in the administrative order. The written judgment required

disagree that the mere existence of an administrative order recommending certain conditions of supervised release, without in-court adoption of that list by the sentencing court, satisfies due process.

We do agree, however, that a district court is not required to individually pronounce each discretionary condition of supervised release if at sentencing the court expressly incorporates a written list detailing those conditions. *See id.* at 563 ("A sentencing court pronounces supervision conditions when it orally adopts a document recommending those conditions."); *Rogers*, 961 F.3d at 299 ("[D]istrict courts may comply with the pronouncement requirement by expressly incorporating a written list of proposed conditions[.]"). But the district court's pronouncement here failed to reference the administrative order or otherwise indicate that the court was adopting conditions of supervised release beyond those mandated by statute. Thus, Rodriguez was denied due process with respect to these conditions.[9]

---

Rodriguez to notify his probation officer at least 10 days prior to any change in residence or employment; the equivalent condition in the administrative order required notification within 72 hours of a change. *See* Administrative Order 1988-06.

[9] We acknowledge that this due process violation is subject to harmless-error review. Although the government argued plain, not harmless, error in its brief on appeal, after oral argument we ordered supplemental briefing on harmless error. The government bears the burden of establishing that the error was harmless beyond a reasonable doubt. *See Margarita Garcia*, 906 F.3d at 1266. Here, the government has failed to carry its burden.

20-13534                Opinion of the Court                29

Because the non-mandatory supervised release conditions were imposed only as part of Rodriguez's written sentence and not at the sentencing hearing, we vacate the conditions and remand for resentencing. On remand, the district court may, after giving Rodriguez an opportunity to be heard, reconsider whether to impose

---

In its supplemental brief, the government argues that the error here was harmless because the administrative order imposes the challenged conditions "by default" in every criminal case unless the sentencing court orders otherwise. Gov. Supp. Br. at 10–11. Thus, the government contends, "even if the conditions were stricken from the judgment as Rodriguez requests, . . . the conditions would still apply under the Administrative Order." *Id.* at 7.

But, as the government acknowledges, the administrative order's conditions are *not* imposed if the sentencing court orders otherwise. The government also brushes aside the inconvenient fact that one of the conditions the district court imposed does not mirror a similar condition in the administrative order. Gov. Supp. Br. at 10 n.6. The difference is that the administrative order requires the defendant to notify the probation officer within 72 hours of a change in residence or employment, yet Rodriguez's written judgment requires notification at least 10 days *prior to* such a change. The government not only inaccurately describes the condition the judgment imposed as a more "lenient" condition, it fails to explain how the imposition of this more onerous condition was harmless. That is so even if we were to accept the government's position that the very existence of the administrative order makes the failure to pronounce any condition contained in it harmless error. Thus, the government has not met its burden to show that—as we have described the harmless-error burden in the sentencing context—"the district court would have imposed the same sentence without the error." *United States v. Barner*, 572 F.3d 1239, 1248 (11th Cir. 2009).

Lastly, the government argues that Rodriguez has failed to articulate any objection to the administrative order's conditions that would have persuaded the district court not to impose them. We will not condone the government's attempt to shift its harmless-error burden to Rodriguez.

30                    Opinion of the Court                    20-13534

each of the discretionary conditions. *See United States v. Johnson*, 765 F.3d 702, 711 (7th Cir. 2014).[10]

## IV.    CONCLUSION

For the above reasons, we affirm Rodriguez's sentence in part, vacate in part, and remand.

**AFFIRMED in part, VACATED and REMANDED in part.**

---

[10] Rodriguez further argues that the district court erred by failing to explain why the supervised release conditions it imposed were justified in light of the statutory sentencing factors and his individual circumstances. Because we conclude that Rodriguez was denied due process with respect to these conditions and remand for resentencing, we do not address his argument that the district court failed to adequately explain them.