[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12447

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOYCE ISAGBA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:19-cr-00064-JA-PRL-2

_____

Before WILLIAM PRYOR, Chief Judge, and ROSENBAUM and GRANT, Circuit Judges.

PER CURIAM:

Joyce Isagba appeals her convictions and sentence for three counts of mail fraud, 18 U.S.C. §§ 1341 and 2, and one count of conspiring to defraud the United States, *id*. § 286, stemming from a scheme by her and her former husband, David Isagba, to defraud the government by filing fraudulent tax returns seeking refunds for sham trusts and shell entities. Of the 227 fraudulent tax returns filed seeking a total $2.9 billion in refunds between 2009 and 2019, the couple obtained eight fraudulent tax refunds totaling $5.3 million. Isagba argues that the district court plainly erred by admitting evidence of prior uncharged conduct, Fed. R. Evid. 404(b), and challenges the sufficiency of the evidence supporting her convictions. She also argues that the district court erred at sentencing by stating that she must comply with the "mandatory and standard conditions adopted by the" district court, without pronouncing each standard condition of supervised release. We affirm.

We review the sufficiency of the evidence *de novo* and view "the evidence in the light most favorable to the government, with all inferences and credibility choices drawn in the government's favor." *United States v. Feldman*, 931 F.3d 1245, 1253, 1257 (11th Cir. 2019) (quotation marks omitted). The evidence will be sufficient to sustain a conviction unless "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *United States v.*

*Shabazz*, 887 F.3d 1204, 1221 (11th Cir. 2018). Although we review a ruling on the admissibility of evidence for abuse of discretion, *United States v. Wilk*, 572 F.3d 1229, 1234 (11th Cir. 2009), our review is for plain error only when a defendant failed to object on that basis in the district court, *United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007).

Isagba argues that the district court plainly erred by admitting evidence that she filed a fraudulent tax return in 2009, about five years before the conduct charged in the indictment, because this tax return was too remote in time and was inadmissible under Rule 404(b) without pretrial written notice. We disagree.

The district court did not plainly err by admitting evidence of Isagba's 2009 fraudulent tax return. Although Isagba was charged and convicted of filing fraudulent tax returns beginning in 2014, evidence of the 2009 fraudulent tax return was not extrinsic under Rule 404(b) because it was necessary to complete the story of her crimes and was inextricably intertwined with the evidence regarding the charged offenses. *See United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). An Internal Revenue Service investigator testified that in 2009 a federal income tax return for tax year 2008 was signed by Isagba as the fiduciary for an estate or trust called "Eneziakpezi" and requested a tax refund of $459,023, even though Eneziakpezi made no payments to the Service for tax year 2008. A month later, the Service issued a refund check for $462,557.62 to the account of "The Irrevocable Trust of Eneziakpezi, Joyce Isagba, trustee." Although Isagba testified that David

had access to the account, Isagba was the only individual with signature authority over the account, and she deposited the paychecks she earned working as a registered nurse into that account. The day after the deposit, the couple signed a purchase agreement for the house, and most of the refund—$257,500—was used to pay the balance due at time of purchase. The couple lived at this house until their separation eight years later, the address for the house appeared on many of the fraudulent tax refunds, and Isagba's name appeared on three fraudulent "Eneziakpezi" tax returns. Within two weeks of the deposit, only $28,000 remained in the account, which the couple drew on for over a year, and Isagba admitted that she used money from the account to make payments. Isagba criticizes trial counsel for failing to object to the 2009 tax return, but we will not consider claims of ineffective assistance of counsel on a record that is insufficiently developed on that issue. *United States v. Patterson*, 595 F.3d 1324, 1328–29 (11th Cir. 2010).

Next, Isagba argues that the government failed to present sufficient evidence to support her convictions. She concedes that her husband was responsible for the scheme but argues that no evidence connected her to a conspiracy or to the fraudulent tax returns underlying her three mail fraud convictions. We disagree. To prove that Isagba committed mail fraud, the government was required to prove that she intentionally participated in a scheme to defraud a person of money or property and used the mails in furtherance of that scheme. *United States v. Ward*, 486 F.3d 1212, 1222 (11th Cir. 2007). She may be convicted "without personally committing each and every element of mail fraud, so long as [she]

knowingly and willfully joined the criminal scheme, and a co-schemer used the mails for the purpose of executing the scheme." *Id.* (footnote omitted). To prove that she conspired to defraud the government by filing false tax returns, the government was required to prove "the existence of an agreement to achieve an unlawful objective," her "knowing and voluntary participation in the conspiracy," and the "commission of an overt act in furtherance of it." *United States v. Pierre*, 825 F.3d 1183, 1193 (11th Cir. 2016).

Sufficient evidence supports the jury's verdict. Although Isagba's name and signature did not appear on the three fraudulent tax returns underlying her mail fraud convictions, the government was not required to prove that Isagba personally mailed the returns. *See Ward*, 486 F.3d at 1222. The government introduced evidence that Isagba began participating in the scheme with her husband by opening the Eneziakpezi account in 2008, maintaining sole control over the account, endorsing the fraudulently-obtained Eneziakpezi refund check in 2009, and utilizing those funds the next day to purchase the home that was listed on other fraudulent tax returns and that the couple lived in for eight years. This evidence also supports the jury's determination that Isagba committed an overt act in furtherance of their extended conspiracy to defraud the government with false claims. *See Pierre*, 825 F.3d at 1193.

The government also presented evidence that, despite Isagba's testimony that she earned about $60,000 annually and was "supporting the household" during 2007 to 2009 when her husband "wasn't working," the couple was able to write a check for over a

quarter-million dollars to purchase a home in 2009. And the government presented evidence that in 2014, David used more than $368,000 from fraudulently-obtained refund checks on four luxury automobiles, including purchasing two BMWs and a Cadillac Escalade on the same day and another BMW several months later, and Isagba admitted to driving some of these luxury vehicles, which established her continued intent to participate in and benefit from the scheme. *See United States v. Naranjo*, 634 F.3d 1198, 1207 (11th Cir. 2011) ("Evidence that a defendant personally profited from a fraud may provide circumstantial evidence of an intent to participate in that fraud."); *United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007) ("Mail fraud can be proved by circumstantial evidence . . . ."). Moreover, the jury was entitled to discredit Isagba's testimony because her contradictions about whether she questioned David about the refunds—that she asked no questions, that she discussed the returns with him, and that she "didn't question" the refunds because she "didn't think of anything" and "didn't think [income tax] was related to how much you make"—suggested that she was not telling the truth about the extent of her knowledge and involvement. *See United States v. Pon*, 963 F.3d 1207, 1234–35 (11th Cir. 2020) ("[A] statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt when combined with other evidence." (quotation marks omitted)). And because the jury's finding related to the highly subjective elements of her intent and knowledge, we apply our substantial deference to the jury's credibility determination "with special force." *United States v. Brown*, 53 F.3d 312, 314–15 (11th Cir. 1995).

Isagba also argues that the district court erred at sentencing by failing to orally pronounce the "standard conditions" of supervised release that were included in her written judgment. We explain why plain error review applies and why we disagree. When a defendant was deprived of the opportunity to object to the conditions of her supervised release at sentencing, we review her argument *de novo*. *United States v. Rodriguez*, 75 F.4th 1231, 1246 n.5 (11th Cir. 2023). But when the defendant had the opportunity to object to the conditions and failed to do so, we review for plain error. *Id*. For example, in *Rodriguez*, the district court stated that the defendant would serve a term of supervised release but did not reference the discretionary conditions, and we held that the district court violated the defendant's right to due process by failing to orally pronounce the discretionary conditions that were included in the written judgment. *Id*. at 1240.

We review for plain error because, unlike in *Rodriguez*, the district court told Isagba that on probation she should "comply with the mandatory and standard conditions adopted by the Court in the Middle District of Florida" and recited each special condition. Although the district appears to have no standing administrative order containing the standard conditions, the district court website provides a template for criminal judgments that contains the 13 standard conditions, and these are the same 13 standard conditions contained in Isagba's written judgment. Further, unlike in *Rodriguez*, by orally pronouncing that Isagba must comply with the "standard conditions adopted by the" Middle District of Florida and asking Isagba if she had any objections to her sentence or the

manner in which it was imposed, the district court provided Isagba the opportunity to inquire about these adopted standard conditions, but she failed to do so. *See id.* at 1240, 1246, 1249.

The district court did not plainly err by failing to pronounce each of the discretionary, standard conditions of supervised release because the district court expressly incorporated the standard conditions adopted by the Middle District of Florida. *See id.* at 1246 n.5. The district court pronounced, as it was required to do, the inclusion of the discretionary, standard conditions, which track the same 13 "'Standard' Conditions" listed in U.S.S.G. § 5B1.3(c). *See id.* at 1246. As we explained in *Rodriguez*, although district courts must pronounce discretionary conditions, district courts are not required to pronounce each discretionary condition if at sentencing the district court expressly incorporates a list of those conditions. *Id.* at 1249. Insofar as Isagba argues that the district court failed to provide an individualized assessment of how each standard condition relates to her offenses or the statutory sentencing factors, 18 U.S.C. § 3553(a), she identifies no controlling law requiring the district court to articulate this assessment. *See United States v. Ramirez-Flores*, 743 F.3d 816, 821 (11th Cir. 2014); *United States v. Hamilton*, 66 F.4th 1267, 1274–75 (11th Cir. 2023) (explaining that section 3553(c) does not require "two separate explanations—one for the term of imprisonment and one for the term of supervised release," so long as the explanation for the entire sentence is adequate).

We **AFFIRM** Isagba's convictions and sentence.