[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-14097

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ANNA PARSONS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:23-cr-00013-WWB-DCI-1

_____

Before JORDAN, ROSENBAUM, and LUCK, Circuit Judges.

PER CURIAM:

Anna Parsons appeals her sentence of 180 months' imprisonment for possession with intent to distribute forty grams or more of fentanyl and fentanyl distribution.  Parsons argues that the district court erred in denying her statutory safety-valve relief under 18 U.S.C. § 3553(f).  She also contends that her sentence is substantively unreasonable because the district court did not properly weigh the § 3553(a) factors and unfairly punished her for an accidental death resulting from her distribution of fentanyl to a friend. After careful review, we affirm.

## I.

In a two-count indictment, Parsons was charged with distribution of a mixture and substance containing fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count 1), and possession with intent to distribute forty grams or more of a mixture and substance containing fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (Count 2).  Parsons pled guilty to both counts without a written plea agreement.

### A.

The offenses occurred as follows, according to the revised presentence investigation report ("PSR").  At around 1:00 a.m. on March 15, 2022, Parsons visited her friend and former coworker Christopher Jackson at a homeless encampment in Kissimmee,

Florida, bringing purported heroin with her as a "party favor." Jackson, Parsons, and another person used the drugs, and Jackson became nonresponsive. Beginning around 2:30 a.m., and over the early morning hours, Parsons called and texted contacts asking for Narcan, a medication used to reverse opioid overdoses. She finally called 911 at 10:26 a.m., after Jackson had stopped breathing. But by then it was too late. Law-enforcement officers responded within minutes to find Jackson dead. The medical examiner determined that his cause of death was fentanyl toxicity.

Parsons initially lied to law enforcement about her involvement in Jackson's death. But under additional questioning, she admitted to providing heroin to Jackson, having additional drugs at her apartment, and selling drugs for her boyfriend, who had recently been arrested. A search of Parsons's apartment later that day uncovered nearly 160 grams of fentanyl.

**B.**

Parsons's recommended guideline range, according to the PSR, was 78 to 97 months, based on a total offense level of 28 and a criminal history category of I. Count 1 carried a statutory maximum of twenty years of imprisonment, while the statutory range for Count 2 was five to forty years.

Parsons objected to the PSR, arguing that she was entitled to a reduction for acceptance of responsibility and that she met the requirements of the safety valve under 18 U.S.C. § 3553(f) in relation to Count 2. She also filed a sentencing memorandum, requesting that the district court vary downward from the guideline range

in consideration of the joint-use nature of the offense, her own problems with drug addiction, and her difficult upbringing.  For its part, the government moved for a nine-level upward departure under U.S.S.G. § 5K2.1, or for a comparable upward variance, to account for Jackson's death.

At sentencing, the district court heard testimony from government witnesses on the disputed issue of whether Parsons was responsible for Jackson's death.  The government argued that, in its view, a preponderance of the evidence showed that Parsons's drug distribution resulted in Jackson's death.  As a result, the government asserted to the court, she was ineligible for safety-valve relief under § 3553(f).  Parsons responded that the death was based on the offense conduct charged in Count 1, so in her view, it did not prevent application of the safety value in relation to Count 2.  She noted that Count 2 was the only count with a mandatory minimum to which the safety valve could apply.

The district court found by a preponderance of the evidence that Parsons's offense conduct resulted in Jackson's death.  And because "the distribution resulted in the death of Mr. Jackson," the court reasoned, Parsons was not eligible for safety-valve relief under § 3553(f).  Separately, the court gave Parsons the benefit of a two-level reduction for acceptance of responsibility, arriving at a total offense level of 26 and a resulting final guideline range of 63 to 78 months.

Parsons ultimately asked for a guideline-range sentence of 63 months.  In support of that request, Parsons presented

mitigating evidence and called a clinical psychologist to testify that she evaluated Parsons and diagnosed her with major depressive disorder, adjustment disorder with anxiety, and several substance-abuse disorders. Parsons also highlighted her difficult upbringing, which included an alcoholic and abusive father, her mother leaving the family, and the traumatic death of a younger brother, as well her own struggles with opioid addiction, stemming from a prior back injury. Parsons personally addressed the court and expressed regret and apologized to Jackson's family. Jackson's mother and sister also gave statements, stating that Jackson was an addict who was responsible for his own choices and that Parsons, whom they described as Jackson's friend, should not be punished for his death.

The government acknowledged that Parsons "probably did not intend" to kill Jackson, but, in its view, "she was engaged in a business, the results of which are well-known, of profiting from poison." The government also surmised that Parsons was "protecting that business"—the "nearly $16,000 of fentanyl back in her apartment"—during the eight hours at the encampment before she called 911. The government sought an upward departure of 11 levels to an offense level of 37, plus a twenty-year sentence.

Stating that it was "not an easy case," the district court explained its assessment of the 18 U.S.C. § 3553(a) sentencing factors. In the court's view, it was a "highly mitigated case." The court found that Parsons was a drug addict, "without a doubt," who sold drugs in part to keep using drugs, that she had a "significant amount of mental pain and psychological trauma" from growing

up, and that she had no "scorable criminal history." Thus, according to the court, Parsons had a "significant need for treatment." The court also noted the statements of grace by Jackson's mother and sister, and it found that Jackson "too made a really bad decision that resulted in his death."

"But the sentence," the district court explained, "has to reflect the seriousness of the offense," "promote respect for the law," and provide "just punishment.' The court stated that dealing fentanyl was a "serious offense," and "when that leads to the death of an individual, it just heightens the seriousness of the offense." The court also cited Parsons's failure to call 911 for help before Jackson stopped breathing, though it conceded she was "high" and likely paranoid at the time.

As to respect for the law, the district court noted that Parsons had violated the conditions of pretrial release by using drugs, "which does not show much respect for the law," and that while she was an "addict," she still "chose to use." It appears Parsons had been granted pretrial release in May 2023, but thereafter used controlled substances, which caused the court to order Parsons detained again in October 2023.[1]

Regarding the need for deterrence, the district court described this case as "tragic," but it found that Parsons had continued to engage "in the distribution of drugs after" Jackson's death. "So

---

[1] According to the PSR, Parsons tested positive for the presence of amphetamine and methamphetamine.

if your friend dying doesn't deter you," the court told Parsons, "I don't know what will deter you." In that regard, a government witness testified that he saw evidence of drug distribution at Parsons's apartment in February 2023, after Jackson's death. Finally, the district court considered the need to protect the public, observing that there was a "fentanyl epidemic in this county that's killing people," and that the toxicology analysis showed that the amount of fentanyl in Jackson's system was several times a lethal dose.

While Parsons did not intend to harm Jackson, according to the district court, she knew there was a significant risk that death or injury could occur whenever heroin or fentanyl are sold or given. In particular, the court said, "there's a risk that you're going to give that drug to somebody that's going to use it and is going to die from it."

Ultimately, the district court imposed a sentence of 180 months, concluding that the guidelines did not adequately reflect the seriousness of the offense, but that the 11-level departure requested by the government was too severe. The court stated that it took "into account everything" in making that assessment, including the victim's family's wishes in this case, which "carried a significant amount of weight to the Court." Upon pronouncement of the sentence, Parsons objected to the court's factual finding that Parsons was responsible for Jackson's death, and to the sentence as a whole, asserting it was procedurally erroneous and "substantively unreasonable in light of the § 3553(a) factors."

After remanding Parsons to custody and wishing her good luck, the district court clarified its earlier ruling. The court stated that it had "granted the [government's] motion for an upward departure," just not the full 11 levels requested, "[b]ut regardless of whether asked, the Court would have varied upward." Parsons appeals.

## II.

Parsons first challenges the district court's refusal to apply the safety valve, 18 U.S.C. § 3553(f). Section 3553(f) permits a court to impose a sentence "without regard to any statutory minimum sentence" if it finds, among other requirements, that "the offense did not result in death or serious bodily injury to any person." 18 U.S.C. § 3553(f)(3). We review de novo a district court's interpretation of the safety valve statute. *See United States v. Johnson*, 375 F.3d 1300, 1301 (11th Cir. 2004).

Parsons maintains that the term "offense" in § 3553(f)(3) refers narrowly to the "offense of conviction," not the broader scope of relevant conduct. And because, in her view, the only offense to which a mandatory minimum applies—Count 2—did not result in Jackson's death, she has satisfied the requirements of the safety valve for that conviction, notwithstanding the court's findings with regard to Count 1.

The government responds that the district court properly considered both crimes of conviction in determining that Parsons was ineligible for the safety valve. In the government's view, "offense" does not always mean "offense of conviction," and the

statutory context supports an interpretation of "offense" that includes relevant conduct. Parsons replies, arguing that the government's interpretation violates the plain text of the statute.

Ultimately, we need not resolve whether the district court erred in its interpretation of § 3553(f)(3). Broadly speaking, we may disregard sentencing errors as harmless if they do not affect a defendant's guideline range or sentence. *See United States v. Brown*, 805 F.3d 1325, 1328 (11th Cir. 2015); Fed. R. Crim. P. 52(a) (stating that any errors that do "not affect substantial rights must be disregarded"). Even a constitutional error at sentencing is harmless "where it is clear beyond a reasonable doubt that the error complained of did not contribute to the sentence obtained." *United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005). While the government ordinarily bears the burden of proving harmlessness, *United States v. Rodriguez*, 75 F.4th 1231, 1249 n.9 (11th Cir. 2023), we have "the discretion to overlook a failure to argue harmlessness and to undertake *sua sponte* the task of considering harmlessness," *Horsley v. Alabama*, 45 F.3d 1486, 1492 n.10 (11th Cir. 1995).

We exercise our discretion to raise harmlessness *sua sponte* because the record makes clear that Count 2's mandatory minimum did not affect the district court's choice of sentence. *See Paz*, 405 F.3d at 948; *Horsley*, 45 F.3d at 1492 n.10. Had the court applied the safety valve here, it could have sentenced Parsons "without regard" to the ordinary five-year minimum. *See* 18 U.S.C. § 3553(f); 21 U.S.C. § 841(b)(1)(B). But Parsons has not shown that the denial of safety-valve relief had any effect on the guideline range. And the

court expressly found that the guideline range, which exceeded that minimum, did not adequately reflect the severity of the offense. The court explained in detail its reasons for concluding that an upward variance, to a sentence three times the mandatory minimum, was necessary to account for the death that resulted from Parsons's criminal conduct. So we can find nothing in the record to so much as suggest that that the mandatory minimum for Count 2 in any way contributed to the sentence the court selected for Parsons or that granting the safety valve here would have changed the sentence the court imposed. To the contrary, the court said that, given the facts here, even if the government hadn't sought a sentence higher than the guideline range—which itself was higher than the minimum mandatory for Count 2—it would have varied upward, anyway. We therefore conclude that any error in refusing to apply the safety valve was harmless.

### III.

Parsons also contends that her sentence is substantively unreasonable. In her view, the district court committed a clear error of judgment by more than doubling the high end of her guideline range to punish her for Jackson's tragic, but accidental, death, especially in light of her difficult upbringing and long-time opioid addiction.

We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard. *United States v. Boone*, 97 F.4th 1331, 1339 (11th Cir. 2024). Under that standard, "[w]e may vacate the sentence only if we are left with the definite

and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors to arrive at an unreasonable sentence based on the facts of the case." *Id.* The party challenging the sentence bears the burden of showing that the sentence is unreasonable. *United States v. Curtin*, 78 F.4th 1299, 1311 (11th Cir. 2023).

We consider whether a sentence is substantively reasonable based on the totality of the facts and circumstances and in light of the 18 U.S.C. § 3553(a) sentencing factors. *United States v. Steiger*, 107 F.4th 1315, 1321 (11th Cir. 2024). Based on those facts and factors, district courts must impose sentences that are sufficient but not greater than necessary to comply with the purposes of sentencing listed in § 3553(a)(2). 18 U.S.C. § 3553(a).

Sentencing courts have "substantial discretion" when weighing the § 3553(a) factors, *United States v. Howard*, 28 F.4th 180, 205 (11th Cir. 2022), and we may not "set aside a sentence merely because we would have decided that another one is more appropriate," *United States v. Irey*, 612 F.3d 1160, 1191 (11th Cir. 2010) (en banc). Rather, "[w]e may set aside a sentence only if we determine, after giving a full measure of deference to the sentencing judge, that the sentence imposed truly is unreasonable." *Id.*

If the district court determines that the § 3553(a) factors justify a sentence outside the guideline range, we must give due deference to that decision. *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir.2008). Still, we also must consider the extent of the deviation and "ensure that the justification is sufficiently

compelling to support the degree of the variance." *Gall v. United States*, 552 U.S. 38, 50 (2007).  A major variance in sentencing requires a more significant justification than a minor one.  *Id.*

Here, Parsons has not shown that her 180-month sentence, while substantial and a major variance from the guideline range, is substantively unreasonable.  She stresses the accidental nature of the death in circumstances of joint drug use.  But even though Parsons did not intend Jackson any harm or sell him the drugs, she does not dispute that his death resulted from fentanyl she distributed, or that the court could vary upward from the guideline range on that basis.  *Cf.* U.S.S.G. § 5K2.1 (recommending an enhanced sentence if "death resulted").

Nor can we find on this record that the extent of the variance fell outside the district court's discretion.  The district court imposed the equivalent of a nine-level increase in Parsons's offense level, less than the eleven levels requested by the government.[2]  The court concluded that, while Parsons did not intend Jackson harm, she also knew there was a significant risk that death or injury could result from distributing heroin or fentanyl.[3]  The court also cited other aggravating factors, including Parsons's failure to call 911 for eight hours after recognizing Jackson's potential need for

[2] A nine-level increase would raise the offense level from 26 to 35, for a resulting guideline range of 168 to 210 months.

[3] That Parsons did not intend harm does not preclude culpability for Jackson's death.  *See, e.g.*, U.S.S.G. § 2A1.4(a)(1) (setting a base offense level of 12 for involuntary manslaughter involving criminally negligent conduct).

Narcan, as well as evidence she had continued distributing drugs after Jackson's death.

Although Parsons presented substantial mitigating evidence, including her own struggles with opioid addiction, the district court expressly considered those matters and weighed them against the aggravating factors it identified. Based on those factors, the sentence the court imposed fell within the range of permissible sentences. The mere fact that we may have weighed those factors differently ourselves is not enough to set aside the sentence. *See Irey*, 612 F.3d at 1191 ("We may not . . . set aside a sentence merely because we would have decided that another one is more appropriate."). We also note that the district court's chosen sentence, while substantial, still remains well below the statutory maximum, which "indicates reasonableness." *United States v. Thomas*, 108 F.4th 1351, 1356–57 (11th Cir. 2024). Under the circumstances, the district court did not abuse its discretion by arriving at a sentence outside the range of reasonable sentences dictated by the facts of the case. *See Boone*, 97 F.4th at 1339.

For these reasons, we affirm Parsons's sentence.

**AFFIRMED.**