[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12315

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ELIESER PEREIRA DELGADO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:17-cr-20441-KMM-8

_____

Before JORDAN, ROSENBAUM, Circuit Judges, and MANASCO, District Judge.[*]

PER CURIAM:

Based on his participation in a fraudulent Medicare billing scheme run through several Florida pharmacies, Petitioner Elieser Pereira Delgado pled guilty to one count of conspiracy to commit wire and healthcare fraud in violation of 18 U.S.C. § 1349. The district court sentenced Delgado to 108 months of incarceration followed by three years of supervised release and imposed a forfeiture money judgment of $2,200,779. On appeal, Delgado raises four[1] issues about his sentence: (1) the denial of a Sentencing Guidelines reduction for acceptance of responsibility; (2) the increase of his Guidelines offense level for his use of sophisticated means in the scheme; (3) the amount of the forfeiture judgment that the court imposed against him; and (4) the district court's pronouncement of the conditions of his supervised release.

After careful consideration and with the benefit of oral argument, we vacate and remand as to the forfeiture money judgment and conditions of supervised release but affirm in all other respects.

---

[*] The Honorable Anna M. Manasco, U.S. District Judge for the Northern District of Alabama, sitting by designation.

[1] Delgado raised but then withdrew another claim related to the use of intended loss rather than actual loss for sentencing computation purposes. Since that claim is no longer before us, we do not address it here.

## BACKGROUND

Delgado was charged in a 39-count superseding indictment with conspiracy to commit wire and healthcare fraud, in violation of 18 U.S.C. § 1349, and healthcare fraud, in violation of 18 U.S.C. § 1347. To accomplish the fraud, Delgado and his co-defendants submitted false and fraudulent Medicare reimbursement claims for nine Florida pharmacies. In the scheme, Delgado acted as a patient and prescription recruiter, getting paid for providing Medicare beneficiary information and prescriptions. In total, the nine pharmacies involved in the scheme submitted about $10,678,160 in fraudulent claims and received roughly $4,857,235 in Medicare payments.

Delgado agreed to plead guilty to one count of conspiracy to commit wire and healthcare fraud, in violation of 18 U.S.C. § 1349. In the plea agreement, the parties jointly recommended that the court find, among other things, that the offense level should be reduced by three levels based on Delgado's acceptance of responsibility. Specifically, the agreement recommended a two-level decrease under U.S.S.G. § 3E1.1(a) based on Delgado's "recognition and affirmative and timely acceptance of personal responsibility" and a one-level reduction under U.S.S.G. § 3E1.1(b) based on Delgado's timely notification of his intention to enter a guilty plea. But the plea agreement released the government from its obligation to recommend an acceptance-of-responsibility reduction if, among other events, Delgado "commit[ted] any misconduct after entering

into this plea agreement, including but not limited to, committing a state or federal offense, [or] violating any term of release."

Following a plea colloquy, Delgado entered a guilty plea. In preparation for sentencing, the U.S. Probation Office submitted its Presentence Investigation Report ("PSI"). As relevant here, the PSI determined the following:

> 1.   Delgado was accountable for an intended loss of $4,429,275 and an actual loss of $2,200,779, the billed and paid amounts for the four Miami pharmacies for which Delgado recruited.
>
> 2.   A two-level increase in the base offense level applied because of Delgado's use of "sophisticated means."
>
> 3.   An acceptance-of-responsibility adjustment was not recommended because Delgado tested positive for cocaine six times while on bond and did not attend mandatory drug treatment. So in the PSI's judgment, Delgado had not "voluntarily terminated or withdrawn from criminal conduct."

Delgado filed objections to the PSI, specifically to its recommended denial of an acceptance-of-responsibility reduction. Delgado argued that he should receive a sentence reduction despite his cocaine use because he had been diagnosed with substance addiction and had immediately notified the government of his intention to plead guilty. Delgado's proposed alternative sentencing recommendation, which he submitted with his objections, included a sophisticated-means enhancement. And in fact, Delgado did not

object to the application of the sophisticated-means enhancement in his objections.

At the sentencing hearing, the district court denied Delgado's request for a downward variance. It reasoned that Delgado's cocaine use while on bond was "inconsistent with acceptance" of responsibility, and given the nature of the conspiracy, a downward variance was not warranted. Before that happened, the prosecutor stated he had "no objection if [Delgado] receives acceptance." But the court noted its "unique position to assess whether a defendant is entitled to an acceptance of responsibility" and denied the reduction anyway.

Ultimately, the district court sentenced Delgado to 108 months of incarceration followed by three years of supervised release and imposed a forfeiture money judgment of $2,200,779. Delgado appealed to this Court.

## JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and jurisdiction over Delgado's challenges to his sentence under 18 U.S.C. § 3742(a). Delgado timely filed his appeal: the district court entered its final judgment and commitment order on July 8, 2022, and Delgado filed his notice of appeal on July 11, 2022.

## STANDARD OF REVIEW

We review a defendant's sentence under "the deferential abuse-of-discretion standard, ensuring first that the district court

committed no significant procedural error, such as improperly cal-culating the sentencing guidelines range." *United States v. Wilson*, 979 F.3d 889, 916 n.16 (11th Cir. 2020) (citing *United States v. Almedina*, 686 F.3d 1312, 1314–15 (11th Cir. 2012)).  We review "the sentencing court's factual findings for clear error and its interpreta-tion and application of the Sentencing Guidelines to those facts *de novo*."  *Id*. (citing *United States v. Maddox*, 803 F.3d 1215, 1220 (11th Cir. 2015)).

When a party does not object to an enhancement or other issue at sentencing, we review for only plain error.  *United States v. Cingari*, 952 F.3d 1301, 1305 (11th Cir. 2020) (citing *United States v. Beckles*, 565 F.3d 832, 842 (11th Cir. 2009)).  The party claiming error bears the burden of proving that (1) error occurred; (2) the error is plain or obvious; (3) it affects his substantial rights in that it was prejudicial and not harmless; and (4) it "seriously affects the fair-ness, integrity, or public reputation of the judicial proceedings."  *Id*. An error affects a defendant's substantial rights if it "'affect[s] the outcome of the district court proceedings,'" including the Guide-lines range calculated and sentence imposed.  *United States v. Malone*, 51 F.4th 1311, 1319 (11th Cir. 2022) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

We review a district court's denial of an acceptance-of-re-sponsibility reduction for clear error, and we will not set such a de-nial aside "'unless the facts in the record clearly establish that a de-fendant has accepted personal responsibility.'"  *United States v. Singh*, 291 F.3d 756, 764 (11th Cir. 2002) (quoting *United States v.*

*Sawyer*, 180 F.3d 1319, 1323 (11th Cir.1999)).  We've also explained that the district court is in the best position to assess "a defendant's apparent sincerity," so we give "special deference" to district-court determinations on acceptance-of-responsibility reductions.  *United States v. Williams*, 340 F.3d 1231, 1241 (11th Cir. 2003).

Finally, we've observed that a defendant lacks the chance at sentencing to object "to the discretionary conditions of supervised release because they [are] included for the first time in the written judgment." *United States v. Rodriguez*, 75 F.4th 1231, 1246 n.5 (11th Cir. 2023) (citing *United States v. Bull*, 214 F.3d 1275, 1278 (11th Cir. 2000)).  So we review challenges to those conditions *de novo*.  *Id*.

## DISCUSSION

### I.    Acceptance-of-Responsibility Reduction

Delgado's first claim on appeal—and the only objection he raised below—is that his sentence was procedurally unreasonable because the district court did not grant an acceptance-of-responsibility reduction.  He argues both that the district court erroneously believed it could not grant an acceptance-of-responsibility reduction and that the government breached its plea agreement by failing to recommend such a reduction.  We conclude that the district court recognized and acted within its discretion.  And as for Delgado's contention about the government's failure to uphold its bargain, even if that's technically true, we cannot say that any breach here changed the outcome of the sentencing proceedings.

The Sentencing Guidelines authorize a two-level reduction when "the defendant clearly demonstrates acceptance of responsibility for his offense" and an additional one-level reduction if the defendant "timely notif[ies] authorities of his intention to enter a plea of guilty." U.S.S.G. § 3E1.1. But the mere fact that a defendant pleads guilty does not entitle him under § 3E1.1 to a reduction for acceptance of responsibility. *United States v. Mathews*, 874 F.3d 698, 709 (11th Cir. 2017); *see also* U.S.S.G. § 3E1.1 cmts. n.3, 5. And we give "great deference" to a district court's determination about whether to grant the reduction. *Id.* So while we typically view a guilty plea as "significant evidence of acceptance of responsibility, 'this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility.'" *Id*. (quoting U.S.S.G. § 3E1.1 cmt. n.3). In deciding whether to grant a reduction, the district court "may consider a broad variety of evidence." *Id*.

Here, we cannot conclude that the district court's denial of an acceptance-of-responsibility reduction was procedurally unreasonable. Rather, the district court's decision fell within its broad discretion. The PSI noted that Delgado tested positive for cocaine six times while on bond and did not attend mandatory drug treatment. It further recommended against the acceptance reduction because Delgado "ha[d] not voluntarily terminated or withdrawn from criminal conduct." Noting this finding, the district court reasoned that Delgado "did violate the terms and conditions of his bond through his drug use while he was on bond. So, I think ***the Court is in a unique position to assess whether a defendant is entitled***

***to an acceptance of responsibility.*** His behavior is inconsistent with that acceptance. So, I'll note the objection and deny it." (Emphasis added).

As we've noted, a district court has "broad discretion to grant or deny a reduction under § 3E1.1." *Mathews*, 874 F.3d at 709. And to be sure, "failed drug test[s]" do not mean "that, as a matter of law, [the defendant] loses his acceptance of responsibility" reduction. *Id.* (quotations omitted). But a district court does not commit clear error when, in the exercise of discretion, it denies the acceptance-of-responsibility reduction based on post-arrest drug use. *See, e.g.*, *United States v. Pace*, 17 F.3d 341, 344 (11th Cir. 1994) (holding that the district court did not err in denying an acceptance-of-responsibility reduction based on marijuana use while on bond, even if unrelated to the offense of conviction); *United States v. Scroggins*, 880 F.2d 1204, 1216 (11th Cir. 1989) (same, for post-arrest cocaine use).

Here, the record indicates that the district court understood that it *could* grant an acceptance-of-responsibility reduction but chose not to do so given its "unique position" at sentencing. In other words, the district court recognized its discretion but exercised that discretion to deny a reduction based on "conduct" that it found to be "inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.3. Our precedent does not require anything more. So we conclude that the district court did not commit clear error when it denied an acceptance-of-responsibility reduction.

We turn to Delgado's claim that the government breached its plea agreement. Because Delgado did not raise this issue at sentencing, we review for plain error only. *See Malone*, 51 F.4th at 1319. We've explained that the government breaches a plea agreement if "it fails to perform" in line with its promises in the plea agreement. *United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016).

So first, we must consider "the scope of the government's promises." *United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004). The unambiguous language of the plea agreement controls. *Id.* Here, the government promised to "recommend" to the district court that Delgado's Guidelines calculation "be reduced by 3 levels based on the defendant's recognition and affirmative and timely acceptance of personal responsibility." "Recommend" means "to suggest (an act or course of action) as advisable"[2]—in other words, affirmative advocacy on behalf of the acceptance-of-responsibility reduction.

At oral argument, the government conceded that Delgado's positive drug tests could have resulted from pre-plea drug use, so it was not relieved of its obligation under the language of the plea agreement to recommend the acceptance-of-responsibility reduction. *See Malone*, 51 F.4th at 1321 (finding under a similarly worded plea agreement that the government was not released from its agreement to recommend an acceptance-of-responsibility

---

[2] *Recommend*, Merriam-Webster Dictionary (last visited Sept. 29, 2023), https://www.merriam-webster.com/dictionary/recommend [https://perma.cc/H72Z-FELZ].

reduction by "only [the defendant's] post-arrest, pre-plea conduct"). In other words, the government breached its agreement if it failed to "recommend" that Delgado receive an acceptance-of-responsibility reduction.

We therefore review the prosecutor's statements during sentencing to determine whether the government upheld its plea-agreement obligation to recommend the acceptance-of-responsibility reduction. The prosecutor said,

> I don't quarrel with probation that one could not award him acceptance of responsibility because he's violated the law by virtue of his cocaine use. But under the circumstances, your Honor, I think he does have a drug problem. Your Honor had remanded him when he tested positive the last time, after your initial review of this matter. So, **I have no objection if he receives acceptance**.

(Emphasis added).

The prosecutor's statement that he had "no objection" to the reduction falls short of affirmatively recommending an acceptance-of-responsibility reduction. Yet the prosecutor's response was generally consistent with favoring a reduction. Indeed, the prosecutor's reference to Delgado's "drug problem" reflects a recognition that drug use did not necessarily mean that Delgado had not accepted responsibility. But though the prosecutor may not have violated the spirit of the plea agreement, his failure to affirmatively recommend the acceptance-of-responsibility reduction did

technically breach the government's promise to "recommend" such an adjustment. *See Hunter*, 835 F.3d at 1324.

Even so, though, that breach did not "affect[] [Delgado's] substantial rights" because it did not "affect the outcome of the district court proceedings," namely, "his sentence." *See Malone*, 51 F.4th at 1320 (quoting *Puckett*, 556 U.S. at 135). To the contrary, the district court explained, "I appreciate the government's not taking any objection to that, but nonetheless . . . I'll note the objection and deny it." In other words, the district court determined based solely on its own view of the facts that, regardless of the government's recommendation, it thought the acceptance reduction was not warranted.

These facts distinguish this case from others in which we have found breach. *See, e.g.*, *Malone*, 51 F.4th at 1321 (finding that the government breached the plea agreement "by arguing against an acceptance-of-responsibility reduction based on [the defendant's] pre-plea conduct," as the court "relied in part" on that argument); *Hunter*, 835 F.3d at 1328 (same, where the government "persisted in actively and formally opposing the reduction" based solely on an adverse credibility finding at a prior suppression hearing).

Because the district court independently determined that it would not award the acceptance reduction, regardless of the government's position, we cannot say that the government's breach affected Delgado's "substantial rights." So we affirm Delgado's sentence in this respect.

## II.    Sophisticated-means Enhancement

Next, Delgado asserts that the government erred in imposing a sophisticated-means enhancement. The Sentencing Guidelines provide for a two-level enhancement if the offense "involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." U.S.S.G. § 2B1.1(b)(10). Commentary to § 2B1.1 defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2B1.1 cmt. n.9(B). Indicia of sophisticated means include "hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts." *Id.* But we've also upheld application of the sophisticated-means enhancement when defendants have concealed their crimes "in a variety of ways" that the Application Note does not expressly mention. *United States v. Feaster*, 798 F.3d 1374, 1381 (11th Cir. 2015).

Still, though, we may not review an issue on appeal that the defendant waived in the district court by inviting the alleged error. *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009). Here, Delgado invited any error in his written objections to the PSI. More specifically, when Delgado filed written objections to the PSI's recommendation against acceptance of responsibility, he suggested that his "Sentencing Guideline Computation *should* be calculated" through an alternative list that included a two-level sophisticated-means "[a]djustment per §2B1.1(b)(10)(C)." (Emphasis added). Then, after inviting the court pre-sentencing to apply the sophisticated-means enhancement, Delgado objected at sentencing to only the denial of the acceptance-of-responsibility reduction and

affirmed that the PSI's Guidelines calculation was otherwise correct. These actions invited any error as to application of the sophisticated-means enhancement.

But even if they didn't, we would find no reversible error. Because Delgado failed to object in the district court to the application of the sophisticated-means enhancement, we would review for plain error. And here, we cannot say that the district court's imposition of the sophisticated-means enhancement was plainly erroneous. Delgado's participation in the fraud had several indicia of sophistication, including but not limited to his use of a shell company to receive proceeds. For instance, Delgado's conduct spanned roughly three years, involved false documents in the form of fake drug prescriptions, and resulted in an actual loss of over $2 million. Our precedent holds that, taken together, characteristics like these support a finding of sophisticated means. *Cf. Feaster*, 798 F.3d at 1382 (finding that repetitive conduct that "went undetected for two years" supported a sophisticated means enhancement); *United States v. Ghertler*, 605 F.3d 1256, 1268 (11th Cir. 2010) (noting that the defendant's use of "forged false company documents . . . over an extended period of time . . . support[ed] the district court's finding" of sophisticated means).

An error is not plain unless it is '"clear under current law."' *Cingari*, 952 F.3d at 1305 (quoting *United States v. Castro*, 455 F.3d 1249, 1253 (11th Cir. 2006) (per curiam)). Under our precedent, that means the district court must have acted contrary to "the explicit language of a statute or rule" or "precedent from the

22-12315          Opinion of the Court          15

Supreme Court or this Court" that "directly resolv[es]" the issue. *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003) (per curiam) (citation omitted). "In the absence of any controlling precedent" or statutory text, there is no plain error. *Id.*

Here, the district court's application of the sophisticated-means enhancement does not conflict with the express text of the Guideline. Nor are we aware of a Supreme Court or Eleventh Circuit opinion directly on point that holds that the district court's application of the sophisticated-means enhancement is improper in these circumstances. As a result, even if we ignored the invited error here, we would still affirm the district court's application of the sophisticated-means enhancement.

### III.    Conditions of Supervised Release

Delgado next challenges his conditions of supervised release. He contends that the district court's written judgment contains discretionary conditions that the court did not impose orally at sentencing, so remand is warranted. We agree.

"When the oral pronouncement of a sentence varies from the written judgment, the oral pronouncement governs." *United States v. Chavez*, 204 F.3d 1305, 1316 (11th Cir. 2000) (citations omitted). Appellate review follows a two-step inquiry. First, we determine whether the oral and written conditions of supervised release "unambiguously conflict[]." *See United States v. Bates*, 213 F.3d 1336, 1340 (11th Cir. 2000). Second, if so, we must direct a limited remand with instructions for the district court to "enter an amended judgment that conforms to its oral pronouncement." *Chavez*, 204

F.3d at 1316.  But when there is merely ambiguity, "as opposed to a conflict between the oral pronouncement and the written judgment," the written judgment governs.  *United States v. Purcell*, 715 F.2d 561, 563 (11th Cir. 1983) (citation omitted).  We evaluate the district court's intent "by reference to the entire record."  *Id.*

We distinguish between mandatory conditions, which a court *must* impose under 18 U.S.C. § 3583(d), and discretionary conditions, which a court *may* impose.  Though a district court need not orally state mandatory conditions in the defendant's presence, "a district court must pronounce at the defendant's sentencing hearing any discretionary conditions of supervised release."  *United States v. Rodriguez*, 75 F.4th 1231, 1246 (11th Cir. 2023).  The district court need not articulate each condition individually; rather, it may "satisfy this requirement by referencing a written list of supervised release conditions," such as those "in the defendant's PS[I] or in a standing administrative order."  *Id.*  In this way, the court "affords any defendant who is unfamiliar with the conditions the opportunity to inquire about and challenge them" and thus satisfies due process. *Id.*

At sentencing, the district court stated that Delgado "shall comply with the mandatory and standard conditions of supervised release."  The written judgment contained nine "[s]tandard [c]onditions" that § 3583(d) does not impose, including "meet[ing] family responsibilities and notifying the probation office of a change of residence at least ten days before any change of

residence occurs."[3]  These "[s]tandard [c]onditions" closely resemble the standing conditions for probation and supervised release that appear in the district court's Administrative Order No. 1988-06.[4]  But the district court did not expressly reference Order No. 1988-06 when it imposed its "[s]tandard" conditions.  And the written judgment differs from Order No. 1988-06 in that it requires ten days' advance notice of a change in address or employment, rather than 72 hours' notice.[5]  As a result, we cannot entirely resolve any lack of clarity as to the meaning of "[s]tandard [c]onditions" by looking solely to Order No. 1988-06.

We recently considered a similar situation in *Rodriguez*. There, "the district court announced that [the defendant's] sentence included a five-year term of supervised release but did not

---

[3] Delgado does not challenge the "special" conditions imposed, as the district court's oral pronouncement of those conditions is consistent with its written judgment and the PSI.

[4] S.D. Fla. Admin. Ord. No. 1988-06, *Standing Conditions of Probation and Supervised Release* (Feb. 29, 1988), https://www.flsd.uscourts.gov/sites/flsd/files/adminorders/1988-06.pdf [https://perma.cc/862T-LQCS].  In 2013, the monthly supervision report deadline was extended from five to fifteen days.  S.D. Fla. Admin. Ord. No. 2013-21, *Amendment to Condition #2 of the Conditions of Supervised Release and Probation of a Judgment and Commitment Order* (Apr. 10, 2013), https://www.flsd.uscourts.gov/sites/flsd/files/adminorders/2013-21.pdf [https://perma.cc/4R52-W2U5].

[5] Order No. 1988-06 has one additional condition: that the defendant "not commit another federal, state, or local crime during the term of supervision." Since this is also a mandatory condition under 18 U.S.C. § 3583(d) and already in the written judgment, no conforming action is necessary.

identify any conditions of supervised release or reference any written list of conditions." 75 F.4th at 1246. In its written judgment, though, the court "added 13 discretionary conditions of supervised release," largely consistent with those in the same administrative order relevant here, Order No. 1988-06. *Id.* We held that "the mere existence of an administrative order recommending certain conditions of supervised release, without in-court adoption of that list by the sentencing court," was insufficient to satisfy due process, and the government had not met its burden of showing harmless error. *Id.* at 1249. So we remanded for the district court, "after giving [the defendant] an opportunity to be heard, [to] reconsider whether to impose each of the discretionary conditions." *Id.*

To be sure, the facts here are distinguishable from those in *Rodriguez*, as the district court at least referenced "standard conditions of supervised release" to which Delgado would be subject. But the district court did not refer to Order No. 1988-06 specifically or even its administrative orders generally. Its oral pronouncement fell short of "in-court adoption" of Order No. 1988-06, *Rodriguez*, 75 F.4th at 1249. Nor did the court otherwise articulate the "standard" conditions of supervised release imposed. And since the conditions in the written judgment did not exactly match those in Order No. 1988-06, we cannot assume the court's intention was to incorporate that order. *See Purcell*, 715 F.2d at 563. Nor can we assume that, because Order No. 1988-06 is publicly available, Delgado had "the opportunity to inquire about and challenge" the "standard" conditions of supervised release at sentencing. *See Rodriguez*, 75 F.4th at 1246.

Rather, the district court needed to "orally pronounce . . . any discretionary conditions of supervised release," either individually or by reference to its administrative order. *Rodriguez*, 75 F.4th at 1246. We remand so the district court may enter an amended judgment and orally clarify the discretionary conditions of supervised release, either by explicit reference to Order No. 1988-06, if that is what it has decided to impose, or by articulating the conditions individually.

## IV.    Forfeiture Money Judgment

Finally, we vacate and remand the forfeiture money judgment entered against Delgado. The district court imposed a forfeiture money judgment of $2,200,779 without finding that Delgado personally received proceeds in that amount. Delgado contends that this was plain error, and the government concedes this point on appeal.

Since Delgado failed to challenge the forfeiture money judgment at sentencing, we review this claim for plain error. A decision that contravenes our or the Supreme Court's "controlling precedent" commits plain error. *Lejarde-Rada*, 319 F.3d at 1291. Joint and several liability for proceeds of a conspiracy in which Delgado was a lower-level participant plainly contradicts *Honeycutt v. United States*, 581 U.S. 443 (2017), and our subsequent decision in *United States v. Elbeblawy*, 899 F.3d 925, 933 (11th Cir. 2018).

Under traditional principles of joint and several liability, each co-conspirator could be held liable for the entire amount of loss caused by the conspiracy. *Cf.* Restatement (Second) of Torts §

875 (Am. L. Inst. 1977).  But in *Honeycutt*, the Court held that, under 21 U.S.C. § 853, a defendant cannot be held "jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire."  581 U.S. at 445.  In so holding, the Court reasoned that "joint and several liability would mandate forfeiture of untainted property that the defendant did not acquire as a result of the crime," which would run contrary to the statutory text and structure of § 853.  *Id.* at 445, 451.  Under binding Supreme Court precedent, then, a lower-level conspirator's forfeiture liability is limited to property he "actually acquired as the result of the" criminal conspiracy.  *Id.* at 454.

In *Elbeblawy*, we extended *Honeycutt* to the forfeiture statute for healthcare fraud, 18 U.S.C. § 982(a)(7), holding that § 982 "does not permit joint and several liability."  899 F.3d at 941–42.  Like § 853, § 982 "reach[es] only property traceable to the commission of an offense."  *Id.* at 941 (citation omitted).  In a healthcare-fraud case, a forfeiture money judgment that exceeds the amount the defendant personally received runs contrary to both *Honeycutt* and *Elbeblawy*.  As the forfeiture judgment here violates this principle, Delgado has established error that is plain.

Delgado has also met his burden as to the other plain-error factors.  The error affected Delgado's "substantial rights" because it "'affected the outcome of the district court proceedings.'"  *Malone*, 51 F.4th at 1319 (quoting *Puckett*, 556 U.S. at 135).  As a result of the error, the district court imposed a forfeiture judgment in the amount of the actual loss traceable to Delgado's

participation in the conspiracy, not the amount of proceeds he personally received.  Perhaps, as a lower-level conspirator, Delgado did not receive the entire $2,200,779.  But even if he did, the district court must make that factual finding before imposing a forfeiture judgment against him in that amount.

Finally, the district court's error "'seriously affects the fairness [and] integrity . . . of the judicial proceedings'"—namely, it undermines consistent application of and adherence to binding precedent.  *See Cingari*, 952 F.3d at 1305 (quoting *Beckles*, 565 F.3d at 842).  We are clearly bound by Supreme Court decisions and our prior panel precedent, as are district courts within our Circuit.  *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).  Because the forfeiture judgment here does not comport with that precedent, we vacate the forfeiture judgment and remand for additional fact-finding as to the amount of proceeds that Delgado personally received from the conspiracy and for the entry of an amended forfeiture judgment.[6]

## CONCLUSION

For the reasons we have explained, we **AFFIRM IN PART and VACATE AND REMAND IN PART** Petitioner's judgment for proceedings consistent with this opinion.

---

[6] Delgado raises an additional argument related to substitute asset forfeiture, but because we remand for fact-finding as to the proceeds Delgado personally received, we need not reach this argument.