[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-11047

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

BELARMINIO LOPEZ-PADILLA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20426-RKA-1

_____

Before JORDAN, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

This case primarily concerns the scope of the jurisdiction of the United States under the Maritime Drug Law Enforcement Act. Belarminio Lopez-Padilla, a Dominican national, appeals his conviction and sentence of 102 months' imprisonment for conspiring to possess with intent to distribute cocaine while aboard a vessel on the high seas subject to the jurisdiction of the United States, in violation of the Maritime Drug Law Enforcement Act.

Lopez-Padilla presents arguments challenging the constitutionality of the MDLEA and his conviction under it, as well as the factual basis of his sentence. He argues that the MDLEA exceeds Congress's authority under the Felonies Clause of the Constitution and his MDLEA prosecution was improper. U.S. Const. art. I, § 8, cl. 10. He also contends that his sentence was based on an erroneous factual finding. For the reasons articulated below, we affirm Lopez-Padilla's conviction and sentence.

**I.**

On July 13, 2021, while on patrol in the Caribbean Sea, the United States Coast Guard intercepted a go-fast vessel, with no indicia of nationality, operating about eighty nautical miles north of El Cabo, Colombia. The vessel jettisoned seventeen bales of contraband, which tested positive for cocaine. Lopez-Padilla and his codefendant, who are both Dominican nationals, were the only

crew on the vessel. No one claimed to be master of the vessel, but Lopez-Padilla made a claim of Dominican Republic nationality for the vessel. The government of the Dominican Republic was contacted by the United States and could neither confirm nor deny registration of the vessel. The vessel was treated as without nationality and subject to the jurisdiction of the United States under 46 U.S.C. § 70502(c).

Lopez-Padilla was charged in an indictment with *conspiracy to possess* with intent to distribute five kilograms or more of cocaine while aboard a vessel on the high seas subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1), 70506(a), (b), and 21 U.S.C. § 960(b)(1)(B) ("Count 1"), and with *possession* with intent to distribute five kilograms or more of cocaine while aboard a vessel on the high seas subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503(a)(1), 21 U.S.C. § 960(b)(1)(B), and 18 U.S.C. § 2 ("Count 2").

Lopez-Padilla pleaded guilty to Count 1 and the government agreed to dismiss Count 2 according to a written plea agreement. The court adjudicated him guilty of Count 1. At sentencing, the district court stated that to prepare itself for sentencing, it reviewed the indictment, the plea agreement, the factual proffer, the revised presentence investigation report, and objections to the revised PSI raised by Lopez-Padilla. The court also stated that it considered "the statements of all parties . . . and the statutory factors set out in 18 [U.S.C. §] 3553(a)." The district court determined that a sentence of just below the guideline range of 108 to 135 months was

appropriate and "important to make sure [Lopez-Padilla] learn[ed] his lesson and never come[s] back and doesn't continue to traffic in cocaine." Further, the district court found that it was "important to subject [Lopez-Padilla] to a serious sentence to make clear to people in this community and abroad that trafficking and *importing cocaine* [was] a very serious crime." (emphasis added). The court sentenced him to 102 months' imprisonment and imposed five years of supervised release. Lopez-Padilla appealed.

## II.

Ordinarily, we review "*de novo* the constitutionality of a statute, because it presents a question of law, but we review for plain error where a defendant raises his constitutional challenge for the first time on appeal." *United States v. Alfonso*, 104 F.4th 815, 828 (11th Cir. 2024) (citation omitted).

"We review the reasonableness of a sentence under an abuse-of-discretion standard." *United States v. Rodriguez*, 75 F.4th 1231, 1241 (11th Cir. 2023) (citation omitted). However, "[w]hen a defendant fails to raise procedural unreasonableness in the district court, we review for plain error." *Id.* (citation omitted).

"To establish plain error, a defendant must show there is (1) error, (2) that is plain, and (3) that affects substantial rights." *Alfonso*, 104 F.4th at 829 (citation omitted). "A substantial right is affected if the appealing party can show that there is a reasonable probability that there would have been a different result had there been no error." *United States v. Bane,* 720 F.3d 818, 830 (11th Cir. 2013). "If all three conditions are met, we may exercise our discretion to

recognize a forfeited error, but only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Alfonso*, 104 F.4th at 829 (citation omitted).

## III.

Lopez-Padilla presents four arguments on appeal. First, he argues that his conviction must be vacated because his offense did not occur on the "high seas" as that term is defined by international law, and therefore, his Maritime Drug Law Enforcement Act prosecution fell outside of Congress's authority to define and punish "[f]elonies committed on the high Seas." Second, he argues that the MDLEA prosecution against him violated his due process rights and exceeded Congress's powers under the Felonies Clause because the offense bore no nexus to the United States. Third, he argues that his conviction must be vacated because Congress exceeded its authority under the Felonies Clause by defining a "vessel without nationality" in 46 U.S.C. § 70502(d)(1)(c) to include vessels that are not stateless under international law. Lastly, Lopez-Padilla argues that the district court plainly erred by relying on erroneous facts in choosing his sentence. Each challenge fails.

### A.

Lopez-Padilla first contends that waters located within an Exclusive Economic Zone are not part of the "high seas" within the meaning of the Felonies Clause under the United States Constitution. He argues that, because his offense did not occur on the high

seas, the allegations within his indictment fall outside of Congress's enumerated powers.

Under Article I, Section 8, Clause 10 of the Constitution, Congress has "three distinct grants of power": (1) "the power to define and punish [p]iracies," (the Piracies Clause); (2) "the power to define and punish [f]elonies committed on the high [s]eas," (the Felonies Clause); and (3) "the power to define and punish [o]ffenses against the [l]aw of [n]ations" (the Offences Clause). *Alfonso,* 104 F.4th at 820 (citation omitted); U.S. Const. art. I, § 8, cl. 10.

We recently held that the MDLE is a constitutional exercise of Congress's authority. In *Alfonso*, the defendants appealed their convictions under the MDLEA, challenging the constitutionality of the MDLEA as applied to them under the Felonies Clause. 104 F.4th at 818-19. In response to their constitutional challenges, we noted that this Court "repeatedly ha[s] upheld the MDLEA as a valid exercise of Congress's power to define and punish . . . Felonies on the high Seas." *Id.* at 820 (citations omitted). We also held that "international law does not limit the Felonies Clause." *Id.* at 826. Further, a nation's EEZ is "part of the 'high seas' for purposes of the Felonies Clause in Article I of the Constitution," and thus "enforcement of the MDLEA in EEZs is proper." *Id.* at 823, 827.

Lopez-Padilla's constitutional challenge has been foreclosed by our decision in *Alfonso*. *See Alfonso*, 104 F.4th at 820, 823, 826-27. First, as to his argument that the United States lacked jurisdiction over the vessel because it was in Colombia's EEZ, the MDLEA prosecution against him is valid because enforcement of the Act in

an EEZ is proper exercise of Congress's authority under the Felonies Clause. *Alfonso*, 104 F.4th at 823, 827. Second, to the extent that Lopez-Padilla argues that Congress's authority under the Felonies Clause went only as far as international law permitted, we held that international law does not limit the Felonies Clause. *Alfonso*, 104 F.4th at 820, 826. Thus, Lopez-Padilla's arrest within Colombia's EEZ placed him squarely under the jurisdiction of the United States as defined under the MDLEA and permitted by the Felonies Clause.

### B.

Lopez-Padilla next argues that there was no nexus between his offense and the United States because he was neither present in the United States nor in any United States territory, he carried on no business activity in the United States, and there was no evidence that the drugs were destined for the United States or that the offense would have a direct and foreseeable effect within the United States. He contends that, given this lack of nexus, the MDLEA prosecution against him exceeded Congress's powers and violated due process.

Lopez-Padilla's argument is again foreclosed by our previous decisions. In *Alfonso*, the defendants similarly argued that the MDLEA prosecution against them violated the Due Process Clause and exceeded Congress's authority under the Felonies Clause because "the drug offenses they were charged with and convicted of bore no nexus to the United States." 104 F.4th at 818 n.4. In response, we noted that such an argument is foreclosed by binding

precedent. *See id.* (citing *United States v. Cabezas-Montano*, 949 F.3d 567, 587 (11th Cir. 2020) (explaining that we have "held that the MDLEA is a valid exercise of Congress's power under the Felonies Clause as applied to drug trafficking crimes without a 'nexus' to the United States"); *United States v. Rendon*, 354 F.3d 1320, 1325 (11th Cir. 2003) (holding that "this circuit . . . [has] not embellished the MDLEA with a nexus requirement"). Our precedent likewise forecloses Lopez-Padilla's argument that the MDLEA prosecution against him violated his due process rights and exceeded Congress's authority under the Felonies Clause because there was no nexus between the vessel and the United States. *Alfonso,* 104 F.4th at 818 n.4; *Cabezas-Montano*, 949 F.3d at 587; *Rendon*, 354 F.3d at 1325. It is irrelevant whether Lopez-Padilla was present in United States territory or his offense would have a direct and foreseeable effect within the United States.

## C.

Third, Lopez-Padilla argues that 42 U.S.C. § 70502(d)(1)(C) improperly allows the United States to treat a vessel as stateless when it is in fact registered to a foreign nation and subject to the exclusive jurisdiction of its flag-state under international law. Congress, he argues, exceeded its authority under the Felonies Clause by exercising jurisdiction under Section 70502(d)(1)(C) because such an exercise of jurisdiction did not comport with international law.

The Maritime Drug Law Enforcement Act makes it a crime to "knowingly or intentionally . . . possess with intent to

manufacture or distribute, a controlled substance" on board "a [covered] vessel subject to the jurisdiction of the United States," and to conspire to do the same. 46 U.S.C. §§ 70503(a)(1), (e)(1), 70506(b). The statute defines a "vessel subject to the jurisdiction of the United States" as including "a vessel without nationality." 46 U.S.C. § 70502(c)(1)(A). A "vessel without nationality" is defined to include "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." 46 U.S.C. § 70502(d)(1)(C). The MDLEA "applies even though the act is committed outside the territorial jurisdiction of the United States." 46 U.S.C. § 70503(b).

A person charged with a violation of the MDLEA "does not have standing to raise a claim of failure to comply with international law as a basis for a defense." 46 U.S.C. § 70505; *see United States v. Hernandez*, 864 F.3d 1292, 1301-02 (11th Cir. 2017). Such a claim "may be made only by a foreign nation" and "does not divest a court of jurisdiction." 46 U.S.C. § 70505. Accordingly, "any battle over the United States' compliance with international law in obtaining MDLEA jurisdiction should be resolved nation-to-nation in the international arena, not between criminal defendants and the United States in the U.S. criminal justice system." *Hernandez*, 864 F.3d at 1302 (rejecting a "challenge to the way that the Coast Guard communicated with the Guatemalan government").

Again, Lopez-Padilla's argument is foreclosed by precedent. In *Lemus*, we held that "international law cannot limit Congress's

authority to define 'stateless vessel' for purposes of the MDLEA." *United States v. Lemus*, 128 F.4th 1374, 1381 (11th Cir. 2025). Reaffirming our previous conclusion in *Alfonso*, we again concluded that "Congress was [not] constrained by international law in crafting its definition of a stateless vessel." *Id.*; *see Alfonso*, 104 F.4th at 826 (holding that "the Felonies Clause is not limited by customary international law"). Both times we addressed "whether international law plays any role in Congress's definition and punishment of crimes under the Felonies Clause." *Lemus*, 128 F.4th at 1379. And both times our conclusion was the same: it does not. *See id.* at 1381; *see Alfonso*, 104 F.4th at 826. We further held that the plain language of the Felonies Clause does not support the proposition that "the Framers incorporated principles of international law into the Felonies Clause circumscribing Congress's authority within the contours of international law." *Lemus*, 128 F.4th at 1378-79.

Here, we are presented with a nearly identical set of facts to those in *Lemus*. Both in *Lemus* and Lopez-Padilla's case, an oral claim of a vessel's nationality was made by the master or individual in charge of the vessel. In both cases, the country whose nationality was claimed could neither confirm nor deny the registration of the vessel. Exactly like the vessel in *Lemus*, also stopped in an EEZ, Lopez-Padilla's vessel was correctly categorized as a "vessel without nationality" as defined under the MDLEA. 46 U.S.C. § 70502(c)(1)(A). Congress's definition of a "vessel without nationality" under the MDLEA is "a constitutional exercise of Congressional authority under the Felonies Clause," unaffected by the separate principles of international law. *United States v. Hernandez*, 864

F.3d 1292, 1303 (11th Cir. 2017) (citing *United States v. Campbell*, 743 F.3d 802, 809-10 (11th Cir. 2014)).

### D.

Finally, Lopez-Padilla argues that the district court plainly erred because it sentenced him based on a misunderstanding that he had been convicted of attempting to import cocaine into the United States. In particular, the sentencing judge said that a serious sentenced was appropriate "to make clear to people in this community and abroad that trafficking and *importing* cocaine is a serious crime" and that he was "accused of trying to *bring in* a huge amount of cocaine." (emphasis added).

"Significant procedural error includes failing to calculate (or improperly calculating) the Guideline range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553 factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *United States v. Rodriguez*, 75 F.4th 1231, 1241 (11th Cir. 2023) (alteration in original) (citation omitted). The district court may base its factual findings at sentencing on "facts admitted by the defendant's guilty plea, undisputed statements in the PSI, or evidence presented at the sentencing hearing." *United States v. Owens*, 96 F.4th 1316, 1321 (11th Cir. 2024) (citation omitted). Reasonable inferences from this evidence are allowed. *Id.* "A factual finding is erroneous when, upon review of the evidence, we are left with a definite and firm conviction a mistake has been made." *Rodriguez*, 75 F.4th at 1241 (citation omitted).

Our precedent holds that a judge's slip of the tongue during a sentencing colloquy does not constitute plain error. In *Waters*, the defendant, convicted of wire fraud, argued for the first time on appeal that the district court made an erroneous factual finding that impacted his sentence, and we reviewed that alleged error for plain error. *United States v. Waters*, 937 F.3d 1344, 1358 (11th Cir. 2019). We held that the defendant did not show that the court's "misstatement constituted a clearly erroneous factual finding because he has not shown that it was a factual finding at all," considering that "[e]arlier in the hearing the district court formally adopted the unobjected-to factual findings in the PS[I]." *Id.* at 1359. We held that we could not determine whether the "judge's slip up" was a "relevant fact finding instead of a stray comment at the end of a long hearing," and "it is one to which there was no objection." *Id.*

Here, Lopez-Padilla argues that the court made misstatements that reflected confusion about the charges and sentenced Lopez-Padilla based on that confusion. We disagree. The court did not exhibit any confusion about the crimes Lopez-Padilla was convicted of committing and gave many reasons for its sentence. The district judge prepared for the sentencing by reviewing the indictment, the plea agreement, the factual proffer, the revised PSI, and the objections to the revised PSI, which made clear the crimes for which Lopez-Padilla was convicted. Although the court referenced importation, as in *Waters*, we have no reason to think that the inclusion of a particular word or phrase by the district court reflects the court's misunderstanding of the case. Instead, even though Lopez-Padilla himself was not charged as the importer of the

cocaine into the North American market, we believe that these statements merely reflect an experienced sentencing judge who is familiar with the fact that the maritime flow of drugs heads north in a general sense. In any event, we do not have a definite and firm conviction that the court's statements at sentencing reflect an erroneous factual finding that affected Lopez-Padilla's sentence. *See Rodriguez,* 75 F.4th at 1241.

## IV.

We **AFFIRM** Lopez-Padilla's conviction and sentence.