[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10840

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

HELEN CHRISTINE JONES,
a.k.a. Christine Howell,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:23-cr-00023-TKW-MJF-2

———————————————

Before BRANCH, ANDERSON, and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, Helen Jones appeals her 70-month sentence for conspiracy to distribute and possess with intent to distribute marijuana and methamphetamine.  On appeal, Jones argues that the district court erred (1) by imposing in the judgment standard conditions of supervised release that it failed to orally pronounce at sentencing, and (2) by failing to elicit *Jones*[1] objections after imposing the sentence.  After review, we agree and vacate Jones's sentence and remand for resentencing.

## I.  BACKGROUND

### A.    Offense Conduct

In 2022, the Drug Enforcement Administration and Florida law enforcement investigated an extensive methamphetamine trafficking network in the Florida panhandle using undercover officers, confidential sources, and cooperating defendants.  Various cooperators gave statements about either supplying methamphetamine to, or buying methamphetamine from, defendant Jones and her husband Robert Howell, who worked as a team.  Some cooperators also reported observing firearms in the

---

[1] *United States v. Jones*, 892 F.2d 1097, 1102 (11th Cir. 1990), *overruled on other grounds by United States v. Morrill*, 984 F.2d 1136 (11th Cir. 1993) (en banc).

home where defendant Jones and Howell stored the drugs and conducted the transactions.

On October 3, 2022, a confidential source conducted a controlled buy of 55.5 grams of methamphetamine from Howell and Jones's residence.  Howell weighed the methamphetamine in a bedroom while Jones came in and out of the room.

The confidential source reported buying an ounce of methamphetamine at the residence one week earlier.  During that transaction, defendant Jones handed a bag to her husband, who put the methamphetamine into the bag.

**B.    Indictment and Guilty Plea**

As a result of the investigation, at least 20 individuals, including defendant Jones and Howell, were indicted on federal drug charges in related cases.  Jones and Howell were indicted together and charged with one count of conspiring to distribute and possess with the intent to distribute marijuana, 50 grams or more of methamphetamine, and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(D), and 846.

After pleading not guilty, defendant Jones was given pretrial release with various conditions.  Later, when Jones violated those conditions, the district court ordered her detained pending trial.

In September 2023, defendant Jones pled guilty pursuant to a written plea agreement.  Jones's husband Howell also pled guilty and received a 188-month sentence.

## C.    Initial Presentence Investigation Report and Objections

In January 2024, the probation officer prepared a presentence investigation report ("PSI") that recommended, *inter alia*, (1) using 8,374.88 kilograms of converted drug weight to calculate a base offense level of 32 under U.S.S.G. § 2D1.1(a)(5) and (2) applying a 2-level firearms increase under § 2D1.1(b)(1) and a 3-level acceptance of responsibility reduction under § 3E1.1, for a total offense level of 31.  With Jones's criminal history category of I, the PSI recommended an advisory guidelines range of 108 to 135 months' imprisonment.  Because Jones was subject to a 10 year (120 month) statutory mandatory minimum, the PSI ultimately set an advisory guidelines range of 120 to 135 months.

The PSI noted the district court was required to impose a supervised release term of at least five years.  Paragraph 94 of the PSI, and of all subsequent versions of the PSI, recommended, "[a]s outlined in the Overview of Probation and Supervised Release Conditions (available at www.uscourts.gov) . . . that any term of supervision be under the mandatory and standard conditions adopted for use by the Northern District of Florida . . . ."  In paragraphs 95 through 98, the PSI recommended various "special" conditions.

Jones objected to the PSI's offense conduct and drug weight, arguing she did not participate in the drug transactions.  While

24-10840              Opinion of the Court                    5

Jones did not explicitly object to the firearms increase, she stated that she was not a convicted felon, had purchased the firearms legally, and did not exchange firearms for drugs.

In response, the government objected to the acceptance of responsibility reduction. The government argued that Jones's objections to the PSI disputed nearly all of the relevant conduct, including "roughly 99% of the drug weight properly attributed to her (3.1 kg vs. 35.39 grams)," and were inconsistent with acceptance of responsibility.

**D.    Revised PSI**

On February 7, 2024, the probation officer released a revised PSI. As relevant here, the revised PSI: (1) lowered the drug weight attributable to Jones to 7,180.78 kilograms ,which did not change her base offense level; (2) removed the acceptance of responsibility reduction; and (3) recommended a new advisory guidelines range of 151 to 188 months.

Jones again objected to the drug weight. The government continued to maintain that Jones was not entitled to any reduction for acceptance of responsibility.

**E.    Final PSI and Substantial Assistance Motion**

Afterward, the parties conferred and agreed to withdraw their respective PSI objections. The parties agreed that a three-level reduction for acceptance of responsibility was appropriate.

Additionally, the government filed a motion pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 based on Jones's substantial assistance to the government.  Specifically, the government stated that Jones (1) provided information about 13 charged individuals "dealing with her husband," (2) testified before a federal grand jury, and (3) was expected to be a witness in the future.

On February 26, 2024, the probation officer released a revised final PSI that: (1) added back the 3-level reduction for acceptance of responsibility; (2) calculated an advisory guidelines range of 120 to 135 months; and (3) indicated the parties would withdraw their previously filed objections.

This final PSI contained the same recommendations for standard conditions of supervised release in paragraph 94 and "special" conditions of supervised release in paragraphs 95 through 98 as the prior versions of the PSI.

F.    **Sentencing**

At Jones's February 29, 2024, sentencing, the district court confirmed that the parties were withdrawing their previous objections to the PSI and had "[n]o objections to the final presentence report."  The government and defense counsel agreed. The district court found that the total offense level was 31, which with a criminal history category of I ordinarily resulted in an advisory guideline range of 108 to 135 months, but here that range was adjusted to 120 to 135 months' imprisonment due to the mandatory minimum.

Jones noted that the government's substantial assistance motion allowed the district court to impose a sentence below the ten-year mandatory minimum.  The government acknowledged Jones's cooperation, but argued that a sentence falling between 48 and 96 months was appropriate.

After hearing argument from the parties, the district court imposed a 70-month sentence, to be followed by a 5-year term of supervised release.  With respect to supervised release, the district court stated:

> While you're on supervision, you'll be subject to the terms and conditions similar to those that you were on on pretrial release that, unfortunately, you were unsuccessful with.  But on posttrial supervision, it will also include drug testing and evaluation, mental health treatment, as well as financial conditions, *and the other conditions that are laid out in paragraphs 95 through 98 of your presentence report.*

 (emphasis added).  The district court did not explicitly mention any standard conditions.  The court did not refer to paragraph 94 of the PSI, which addressed standard conditions, or to the list of standard conditions adopted by the Northern District of Florida.

After the sentence was imposed, the district court asked if it "covered everything from probation's perspective," to which the probation officer responded affirmatively.  And the district court asked the same question of the government and defense counsel, who also both responded affirmatively.  The district court asked

Jones if she understood her sentence and why she received it, and Jones responded that she did.  After informing Jones of her appeal rights, the district court asked, "anything else?" and both parties responded in the negative.

## G.    Written Judgment

After the sentencing hearing, the district court entered a written judgment reflecting Jones's 70-month prison sentence and 5-year term of supervised release.  The written judgment included a list of mandatory conditions of supervised release consistent with 18 U.S.C. § 3583(d) and a list of "special" conditions.  Those are not challenged here.

But the judgment also included a list of 13 standard conditions of supervision, which were not mentioned by the district court at sentencing.  This list of standard conditions in the judgment was identical to the list of 13 standard conditions found on the uscourts.gov website, as referred to in paragraph 94 of the PSI.  The problem is, at sentencing, the district court never referenced paragraph 94 or that list on the website.

Jones appealed her sentence.

## II.  DISCUSSION

On appeal, Jones's counsel filed a motion to withdraw and an *Anders* brief in support of the motion.  This Court denied counsel's motion and ordered merits briefing on (1) whether the district court violated Jones's right to due process at sentencing by failing to orally pronounce the standard conditions of supervised

release it later included in the written judgment; and (2) whether the district court erred by failing to elicit objections following imposition of Jones's sentence.

For the following reasons, we conclude the district court erred on both counts and that a remand is required to afford Jones notice of, and an opportunity to be heard on, the 13 standard conditions of supervised release and an opportunity to raise any final objections to the sentence the district court imposes.

## A.    Pronouncement of Standard Conditions of Supervision

"To satisfy due process, the district court must pronounce the sentence so that the defendant has notice of the sentence and an opportunity to object." *United States v. Hayden*, 119 F.4th 832, 838 (11th Cir. 2024) (quotation marks omitted). Thus, the district court violates a defendant's due process rights "when its oral pronouncement of the sentence differs from the written judgment that it later enters." *Id.*

As to the supervised release portion of a defendant's sentence, this Court held in *United States v. Rodriguez* that due process requires the district court to "pronounce at the defendant's sentencing hearing any discretionary conditions of supervised release—that is, any condition of supervised release other than those mandatory conditions set forth in 18 U.S.C. § 3583(d)." 75 F.4th 1231, 1246 (11th Cir. 2023). "The omission of such a condition violates principles of due process because the defendant [i]s denied an opportunity to be heard on the discretionary condition by, for example, disputing that the condition is necessary

or arguing that it should take another form." *Id.* at 1248 (quotation marks omitted).

The *Rodriguez* Court explained, however, that district courts are "not required to individually pronounce each discretionary condition of supervised release if at sentencing the court expressly incorporates a written list detailing those conditions." *Id.* at 1249. The district court can do so through an "oral in-court adoption" of either (1) a prior administrative order that identifies supervised release conditions or (2) "recommended conditions included in the [PSI]." *Id.* at 1248-49 & n.7. The *Rodriguez* Court rejected an argument that "the mere existence of an administrative order recommending certain conditions of supervised release, *without in-court adoption of that list by the sentencing court*, satisfies due process." *Id.* at 1249 (emphasis added); *cf. Hayden*, 119 F.4th at 838-39 (affirming where the district court orally referenced the discretionary standard conditions of supervised release for the Middle District of Florida and the oral pronouncement and the written judgment did not conflict).[2]

---

[2] We review *de novo* a due process claim that the defendant lacked notice and an opportunity to object to discretionary conditions of supervised release because they were included for the first time in the written judgment. *Rodriguez*, 75 F.4th at 1246 n.5. While *Rodriguez* error is subject to harmless error review, *id.* at 1249 n.9, the government has not argued, much less shown, that the error here was harmless. Further, Jones points out that she is affected by the standard condition in the written judgment forbidding interaction with convicted felons because both her husband and her daughter have been convicted of felonies.

Here, the district court erred under *Rodriguez* because at sentencing it failed to orally pronounce the 13 discretionary standard conditions of supervised release it later included in the written judgment. At sentencing, the district court stated that, while on supervision, Jones would "be subject to the terms and conditions similar to those that [she was] on [while] on pretrial release." But the conditions of Jones's pretrial release did not match the standard conditions of supervision listed in the written judgment.

Specifically, Jones's pretrial supervision conditions prohibited her from possessing a firearm or leaving the Northern District of Florida without her pretrial services officer's approval and required her to surrender any passport, submit to random drug testing, participate in substance abuse or psychiatric counseling, and comply with any curfew as directed by her pretrial services officer, submit to location monitoring, and report any contact with law enforcement within 24 hours.

Only a few of the written judgment's 13 standard conditions of supervision are similar (but not identical) to Jones's pretrial release conditions. For instance, the similar standard conditions prohibit Jones from possessing a firearm and require her to notify her probation officer within 72 hours if she is arrested or questioned by a law enforcement officer and to get her probation officer's permission before knowingly leaving "the federal judicial district where you are authorized to reside."

However, *most of the standard conditions* in the written judgment are *different*.  For instance, the different standard conditions in the written judgment require Jones to: (1) answer truthfully her probation officer's questions, (2) live at a place approved by her probation officer, (3) notify her probation officer 10 days before changing her living arrangements, (4) allow her probation officer to visit at home or elsewhere at any time, and (5) work full time, and prohibit Jones from (6) communicating or interacting with someone she knows is engaged in criminal activity, (7) knowingly communicating or interacting with a convicted felon without her probation officer's prior permission, and (8) acting as a confidential informant without the court's permission.

None of these different standard conditions can be found in the district court's order setting her conditions of pretrial release. Thus, the district court's oral reference to Jones's pretrial conditions did not give her an opportunity to object to these different standard conditions in the written judgment and did not satisfy due process. *See Rodriguez*, 75 F.4th at 1248; *see also Hayden*, 119 F.4th at 838.

In addition, the district court stated at sentencing that Jones's "posttrial" supervised release would "also include drug testing and evaluation, mental health treatment, as well as financial conditions, and the other conditions that are laid out in paragraphs 95 through 98 of [Jones's] presentence report." This statement was also insufficient to afford Jones notice and an opportunity to object

to the standard conditions in the written judgment because, as the government acknowledges, paragraphs 95 through 98 of the PSI recommended only *special* conditions of supervised release.

And as noted above, the district court did not mention any *standard* conditions at all or refer to paragraph 94 of the PSI, the paragraph that recommended certain standard conditions (namely, those "outlined in the Overview of Probation and Supervised Release Conditions" available at www.uscourts.gov and "adopted for use in the Northern District of Florida").[3] In other words, the district court did not make an "oral in-court adoption" of the *standard* conditions recommended in paragraph 94 of the PSI. *See Rodriguez*, 75 F.4th at 1248 n.7. We recognize the district court's failure to refer to the standard conditions in paragraph 94 was likely an oversight. Nonetheless, as with the administrative order in *Rodriguez*, "the mere existence of" a PSI recommending standard conditions, "without in-court adoption of that list by the sentencing court," does not satisfy due process. *See id.* at 1248.

We reject the government's argument that the district court's oral pronouncements, "viewed as a whole," suffice under this Court's decision in *Hayden*. In *Hayden*, the district court

---

[3] We note that the Northern District of Florida does not appear to have any standing administrative order regarding conditions of supervised release and does not make available on its website a list of standard conditions applicable to all individuals placed on supervised release. Thus, it is not clear whether the Northern District of Florida has, in fact, "adopted for use" the standard conditions found in the Overview of Probation and Supervised Release Conditions on the U.S. Courts' website.

referred explicitly to standard conditions during the sentencing and identified them specifically and separately from the special conditions it also imposed. In particular, the district court stated that the defendant would "need to comply with the mandatory and *standard conditions adopted by the Court in the Middle District*" and then explained that the defendant "would also be subject to special conditions of supervised release and described each of those special conditions." *Hayden*, 119 F.4th at 835-36 (emphasis added). This Court concluded that because the district court had "orally referenced the 13 discretionary standard conditions of supervised release for the Middle District of Florida," the defendant had the requisite notice that distinguished it from *Rodriguez*. *Id.* at 838. In contrast, at Jones's sentencing the district court did not even use the phrase "standard conditions," much less orally reference a specific list of standard conditions. The government's reliance on *Hayden* is unavailing.

In short, under our precedent, the district court did not orally pronounce any standard conditions at all that applied to Jones's term of supervised release, but only referenced "special" conditions that were different from the standard conditions in the written judgment. This fails to satisfy due process.

## B.    Failure to Elicit Objections to the Sentence Imposed

Under *United States v. Jones*, the district court must "elicit fully articulated objections, following imposition of the sentence, to the court's ultimate findings of fact and conclusions of law." 899 F.2d 1097, 1102 (11th Cir. 1990), *overruled on other grounds by*

*United States v. Morrill*, 984 F.2d 1136 (11th Cir. 1993) (en banc).  The purposes of a *Jones* colloquy are to elicit objections for appellate review and to give the district court an opportunity to correct any errors it may have made, which if corrected to the objecting party's satisfaction, will likely limit the issues on appeal or render an appeal unlikely.  *See United States v. Mosely*, 31 F.4th 1332, 1334 (11th Cir. 2022); *United States v. Holloway*, 971 F.2d 675, 681 (11th Cir. 1992).

We review *de novo* whether the district court elicited objections as required by *Jones*.  *United States v. Carrasquillo*, 4 F.4th 1265, 1271 (11th Cir. 2021).  Where the district court fails to do so, "we ordinarily vacate the sentence and remand to the district court to give the parties an opportunity to present their objections." *Mosley*, 31 F.4th at 1334 (quotation marks omitted).  However, if there was "a mere 'technical' *Jones* violation" and the record allows for review of the objections, we will not remand and will consider the objections *de novo*.  *Id*. at 1334-35.

Here, the government concedes, and we agree, that the district court did not comply with *Jones*.  The district court merely asked whether it had "covered everything" and if there was "anything else" to do after imposing Jones's sentence.  As the government acknowledges, this did not satisfy the requirement under *Jones* to "elicit fully articulated objections."  *See United States v. Campbell*, 473 F.3d 1345, 1348 (11th Cir. 2007).

Further, we recognize the government argues the district court's error was merely "technical" because Jones did not raise *any* objections during her sentencing hearing.  *See Holloway*, 971 F.2d at

681; *see also Carrasquillo*, 4 F.4th at 1271.  However, on appeal Jones identifies three objections she says she would have raised had the district court complied with *Jones*.  Specifically, Jones asserts that she would have challenged the drug weight and firearms increases used to calculate her total offense level under the Sentencing Guidelines and she would have argued that the district court's chosen sentence created sentencing disparities with others involved in the drug conspiracy, such as Steven Webster and Richard Carey.

Given that a remand already is necessary to remedy the *Rodriguez* error discussed above, we conclude the best course under the circumstances is for the district court on remand to correct the *Rodriguez* error, impose the resulting sentence, comply with *Jones* by eliciting the objections the parties wish to make to that sentence, and address those objections in the first instance. We express no opinion as to the merits, timeliness, or waiver of whatever objections Jones wishes to make after the district court complies with *Jones*.

## III.  CONCLUSION

We vacate and remand for resentencing consistent with this opinion.

**VACATED AND REMANDED.**